**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Andres GUERRERO,
Defendant–Appellant.**

No. 89–3730.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1990.
Decided July 25, 1991.

Ava M. Gould, Office of U.S. Atty., Crim. Div., Barry R. Elden, Asst. U.S. Atty., Office of U.S. Atty., Crim., Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Jeffrey Urdangen, Chicago, Ill., Jess Martinez, Jr., Waukesha, Wis., for defendant-appellant.

Before COFFEY, RIPPLE and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

The defendant Guerrero appeals his conviction of conspiracy to possess with intent to distribute 30 kilograms of cocaine, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 841(a)(1), alleging ineffective assistance of counsel due to counsel's failure to request a severance from the defendant Barrera pursuant to Rule 14, and because of comments made by counsel in his closing argument which Guerrero claims were prejudicial. We affirm.

## I. FACTS AND DISPOSITION BELOW

On March 23, 1989, law enforcement agents arrested Andres Guerrero, Jose Barrera and Saul Sanchez in the act of selling 30 kilograms of cocaine to DEA Agent Art Martinez. A federal grand jury returned a two-count indictment on April 20, 1989, charging Guerrero, Barrera and Sanchez with conspiracy to possess with intent to distribute 30 kilograms of cocaine in violation of 21 U.S.C. § 846, and with possession of cocaine with intent to distribute, in violation of 18 U.S.C. § 841(a)(1). Saul Sanchez pleaded guilty, and the co-defendants, Guerrero and Barrera proceeded

to trial. (Guerrero was found guilty and Barrera was acquitted).

At trial the government presented evidence establishing that Guerrero agreed to sell 30 kilograms of cocaine to Agent Martinez. In addition, the government introduced in evidence a video tape which displayed the defendant at the scene of the cocaine transaction. The evidence of Guerrero's involvement in the cocaine sale is not at issue on this appeal.

Barrera called two witnesses and testified on his own behalf. His defense was that he did not want to get involved in drugs but the informant persuaded him. On the other hand, the co-defendant Guerrero did not testify nor did he call any witnesses. Rather, Guerrero's attorney's theory of defense, presented during closing argument, was that Guerrero was a member of a conspiracy to sell cocaine but that he was not involved in the particular conspiracy with the defendant Barrera set forth in the indictment. The jury convicted Guerrero of both counts charged in the indictment and found the co-defendant Barrera not guilty. The court sentenced the defendant Guerrero to 121 months imprisonment on each Count and ordered the sentences to be served concurrent with each other and to be followed by five years of supervised release.

## II. ISSUES FOR REVIEW

■ On appeal the defendant Guerrero asserts that he was denied his sixth amendment right to effective assistance of counsel during trial. Guerrero presents three arguments to support his claim of ineffective assistance of counsel: 1) his lawyer was ineffective because he failed to request a severance from the co-defendant Barrera; 2) his lawyer's closing argument was improper because he conceded that the defendant was guilty of a different conspiracy to distribute cocaine, and further he commented on the defendant's right not to testify; and 3) that the cumulative effect of his lawyer's trial errors constituted ineffective assistance of counsel.[1]

---

1. Guerrero raises his claim of ineffective assistance of counsel for the first time on direct appeal, having failed to raise the issue before the trial court. "[A]lthough defendants may ap-

## III. DISCUSSION

At the outset, we note that the burden upon a defendant raising an ineffective assistance of counsel claim is a "heavy one." *Sullivan v. Fairman,* 819 F.2d 1382, 1390 (7th Cir.1987). In *United States v. Moya–Gomez,* 860 F.2d 706, 763–64 (7th Cir.1988) we outlined what a defendant alleging ineffective assistance of counsel must demonstrate:

"(1) that his attorney's representation fell below an objective standard of reasonableness (performance prong), *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984), and (2) that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different (prejudice prong), *id.* at 694, 104 S.Ct. at 2068. *See also United States ex rel. Barnard v. Lane,* 819 F.2d 798, 802 (7th Cir.1987); *United States v. Hillsberg,* 812 F.2d 328, 336 (7th Cir.), *cert. denied,* [481] U.S. [1041], 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987). With regard to the performance prong, the defendant must identify the specific acts or omissions of counsel that form the basis for his claim of ineffective assistance. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. The court 'must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' *Id.* The court's scrutiny of counsel's performance must be conducted with a high degree of deference and without the distorting effects of hindsight. *Id.* at 689, 104 S.Ct. at 2065; *United States v. Sherwood,* 770 F.2d 650, 655 (7th Cir.1985). As to the prejudice prong of the inquiry, a 'reasonable probability' of a different result means a 'probability sufficient to undermine confidence in the outcome [of the trial].' *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068."

Therefore, "ineffective assistance of counsel requires a showing that representation fell below an objective standard of reasonableness, and there exists a reasonable possibility that, but for unprofessional errors, the result of the proceeding would have been different." *United States v. Balzano,* 916 F.2d 1273, 1292 (7th Cir.1990). With these principles guiding our review, we now examine the defendant's individual arguments.

### A. Severance

 Initially, the defendant contends that he was prejudiced by his trial counsel's failure to seek a severance pursuant to Rule 14 of the Federal Rules of Criminal Procedure.[2] Guerrero specifically argues that the entrapment defense put forth by his co-defendant, Jose Barrera, was antagonistic to his interest because his defense was that he was not a member of the conspiracy to distribute cocaine as charged in the indictment. Thus, the defendant argues that joinder with Barrera in a joint trial was prejudicial to his case.

 A defendant attempting to demonstrate prejudice as a result of joinder must establish that the defenses were mutually

---

peal from a judgment after a guilty plea, appellate courts do not as a general rule consider the defendant's claims of ineffective assistance of counsel" if those claims have not been presented to the district court. *United States v. Asubonteng,* 895 F.2d 424, 428 (7th Cir.), *cert. denied* — U.S. ——, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990), quoting *United States v. Ray,* 828 F.2d 399 (7th Cir.1987); see also *United States v. Nero,* 733 F.2d 1197, 1207 (7th Cir.1984) (stating that "the issue of ineffectiveness of counsel, if not presented before the district court, will not be addressed on appeal"). However, an appellate court may review an ineffectiveness of counsel claim which was not presented before the district court if the record is sufficiently developed with regard to the issue. *Asubonteng.*

Because this record is sufficiently developed to enable this court to review Guerrero's claim of ineffective assistance of counsel, we chose to consider the issue.

2. Rule 14 provides in pertinent part:

"**Relief from Prejudicial Joinder.** If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

antagonistic. *United States v. Briscoe,* 896 F.2d 1476, 1516–18 (7th Cir.1990). "[S]everance based on 'mutually antagonistic' defenses is required only when the defenses are irreconcilable and so antagonistic that 'the acceptance of one party's defense will preclude the acquittal of the other.'" *Id.* at 1518 (citations omitted). This court has previously addressed the issue of when defenses are so mutually antagonistic that the acceptance of one defendant's defense will preclude the acquittal of the other defendant. In *United States v. Gironda,* 758 F.2d 1201 (7th Cir. 1985), *cert. denied,* 474 U.S. 1004, 106 S.Ct. 523, 88 L.Ed.2d 456 (1985), defendant Heckens moved for a severance or in the alternative a mistrial on the grounds that defendant Gironda's opening statement implied that Heckens was guilty of a conspiracy to steal money from two banks. Gironda argued in his defense that he was innocent of any conspiracy that occurred; Heckens argued in his defense that the government failed to prove all of the required elements of the crime of conspiracy to steal money in the case against him. The court determined that the jury could have accepted Gironda's defense that he did not participate in the scheme while at the same time accepting Heckens' defense that the government failed to prove all the elements of the crime of conspiracy. Thus, the court affirmed the denial of severance. *Id.* at 1220. Similarly, in *United States v. Moschiano,* 695 F.2d 236 (7th Cir.1982), *cert. denied,* 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 111 (1983), co-defendant Bishop argued that severance was necessary because of inconsistent defenses: defendant Moschiano raised an entrapment defense while defendant Bishop contended that he was an unwitting accomplice who withdrew from the scheme to distribute heroin once he learned that Moschiano was dealing in drugs. The court concluded that the defenses were not mutually antagonistic and therefore denied the motion for severance. *Id.* at 246–47.

Like the entrapment defense asserted by the defendant in *Moschiano,* the entrapment defense asserted by Barrera was not mutually antagonistic to Guerrero's posi-tion in that he argued that he was not a member of the same conspiracy namely the conspiracy to distribute cocaine: if the jury found that Barrera was entrapped into dealing in cocaine by the informant, it could without any problem also have accepted Guerrero's theory and determined that he was not a member of the conspiracy to distribute cocaine as charged in the indictment. The fact that the jury acquitted Barrera and found Guerrero guilty does not necessarily imply that the jury was forced to choose between believing one over the other.

The defendant also argues that even if the defenses were not mutually antagonistic, the actual conduct of Barrera's defense was unduly prejudicial to him. The defendant points to several instances during the course of the four day trial where he claims that the defense of the co-defendant Barrera was unduly prejudicial to his cause, but from our review only one specific example warrants attention. During the government's cross-examination of Barrera, Barrera admitted that Guerrero helped him obtain cocaine samples and the 30 kilograms of cocaine:

> "MR. NEWMAN: (Assistant United States Attorney) Let me restate it. It was Andres Guerrero from whom you attained directly or indirectly the two samples—that's what you testified to—and it was also Andres Guerrero who helped you obtain the 30 kilos of cocaine which were at G & F Electronics on March 23, 1989; isn't that right?
>
> MR. BARRERA: Yes."

The defendant bears the burden of demonstrating undue prejudice from the joint trial: "To meet this burden, [the defendant] must establish that the joint trial was unfair, not merely that [he] would have had a better chance of acquittal if [he] had been tried separately." *United States v. Rollins,* 862 F.2d 1282, 1290 (7th Cir.1988). The defendant Guerrero's argument that Barrera's responses on cross-examination concerning Guerrero's involvement in the conspiracy amounts to nothing more than mere finger-pointing. This court has previously noted:

"Finger-pointing is an acceptable cost of the joint trial and at times is even beneficial because it helps complete the picture before the trier of fact. Unless the defenses are so inconsistent that the *making* of a defense by one party will lead to an unjustifiable inference of another's guilt, or unless the acceptance of a defense *precludes* acquittal of other defendants, it is not necessary to hold separate trials. *United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir.1987)."

Indeed, because the defenses offered by Guerrero and Barrera were not inconsistent and as we noted *supra*, the entrapment defense asserted by Barrera did not necessarily preclude the acceptance of Guerrero's defense that he was not involved in the conspiracy, we are convinced from our review of the record that Guerrero has failed to demonstrate any actual prejudice, and that defense counsel's decision not to seek a severance was an exercise of acceptable trial strategy.

### B. Closing Argument

The defendant also argues that he was denied effective assistance of counsel due to his trial counsel's alleged concession that the defendant was guilty of a conspiracy to sell cocaine during his closing argument and because he commented on the defendant's failure to testify.

### 1. "Other Conspiracy" Theory of Defense

The defendant contends that his trial "counsel was grossly deficient and ineffective when, during his closing argument to the jury, he conceded that Andres Guerrero was guilty of conspiracy" to distribute cocaine. The defendant's trial counsel did not (as the defendant contends) concede that the defendant was guilty of the charged offense; rather, the defendant's trial counsel argued that the defendant was involved in another separate and distinct conspiracy to distribute cocaine:

"MR. MARTINEZ: (Counsel for Guerrero) Our defense, as you don't know yet, is that maybe Mr. Guerrero was a member of a conspiracy, but it didn't produce the 30 kilos. You'll have to find, and the judge will instruct you and you will read it, that he was a member of the ultimate conspiracy that ultimately delivered the 30 kilos. His conspiracy was to deliver 30 kilos of a brand of cocaine that was marked or should have been marked 'Tia'. But—excuse me. This conspiracy was supposed to deliver 30 kilos of La Reina.

MR. NEWMAN: (Assistant United States Attorney) Your honor, I'm going to object to this. The indictment does not allege that.

THE COURT: I don't know whether it does, and the jury has heard the evidence, too. And whatever of these arguments are not consistent with your memory of the evidence, you just ignore the lawyers.

MR. MARTINEZ: I'll correct myself. The conspiracy Mr. Andres Guerrero was in was to deliver 30 kilos of cocaine marked La Reina. And ultimately what shows, and up the evidence substantiates [sic] that Mr. Andres Guerrero was talking about La Reina constantly, what shows up is a cocaine marked 'Tia'."

This defense of multiple conspiracies was clearly viable because had the jury been convinced (which they were not) that the defendant was not involved in the charged conspiracy, the jury would have found the defendant not guilty as charged. *United States v. Glenn,* 828 F.2d 855, 858 (1st Cir.1987). Throughout the trial, the defendant's counsel conducted the defense of the case in a manner consistent with the defense of multiple conspiracies. During opening statements, counsel asked the jury to "listen closely to the evidence [because] on all nine tapes, you never hear my client on any of them until the ninth tape, and you hear him say a few things." He also discussed the video tape and told the jury to "pay special attention" to the video because the defendant was not present when Agent Martinez showed the money to Barrera and Sanchez the first time, and seemed totally disinterested and not involved the second time the money was

"flashed." Counsel replayed the video during the cross-examination of Agent Martinez, stressing that his client neither looked at the money nor mentioned cocaine. Moreover, during the cross-examination of Agent Martinez, the defendant's counsel established that the purchase of the defendant's supply of cocaine was to be of "La Reina" cocaine, but instead, the cocaine actually delivered was stamped "TIA." Based on the evidence presented by the defendant's counsel, the trial court gave the jury a multiple conspiracy instruction.[3] The fact that the jury chose not to believe this defense does not mean that this court is required "to conclude that a particular act or omission of counsel was unreasonable." *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).

Nonetheless, the defendant (with the benefit of hindsight), casts aspersions on his trial counsel's performance. However, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's prospective at the time." *Id.*

The "prospective" facing the defendant's counsel at the time of trial was one of overwhelming evidence that the defendant was an integral part of the conspiracy to distribute cocaine. The government's case against the defendant consisted of the following: 1) approximately 250 pages of transcripts of taped conversation documenting conversations among the conspirators regarding the cocaine transaction (in the first recorded conversation on March 10, 1989, Barrera refers to Guerrero as a source of cocaine, and throughout nearly all the subsequently recorded conversations, Barrera continues to mention Guerrero as the source of cocaine); 2) Barrera called the defendant Guerrero at Guerrero's place of employment in Alvarez's presence to inquire about "the ship" and gave the defendant the telephone number of Alvarez's beeper (Barrera related to Alvarez that the defendant would use code number "18" to page Alvarez on the beeper when the cocaine arrived); and 3) video tape of the defendant at the scene of the cocaine transaction. In light of this amount of evidence of the defendant's participation in the conspiracy, trial counsel's defense of multiple conspiracies arguing that the defendant participated in a different conspiracy rather than the one set forth in the indictment was entirely acceptable.

### 2. Counsel's Reference to Defendant's Failure to Testify

■ The defendant also argues that his counsel's reference during closing argument to the defendant's failure to testify violated his fifth amendment right against self-incrimination and thus unduly prejudiced him:

"MR. MARTINEZ: (Counsel for Guerrero) Ladies and gentleman, I also ask you when you're reviewing the evidence to give my client every consideration. Do not hold it against him that he did not take the stand, because he has that absolute right, and you will be instructed regarding that absolute right to remain silent. He chose to do

---

**3.** The trial court gave the following instructions:

"Although the indictment charges a single overall conspiracy, it might be possible to find separate conspiracies regarding distinct parts of this case.

Whether there was one conspiracy, two conspiracies, multiple conspiracies or no conspiracy at all is a fact for you to determine in accordance with these instructions.

If you do not find beyond a reasonable doubt that a particular defendant was a member of any conspiracy, you should find that defendant not guilty of Count 1.

If you find beyond a reasonable doubt that there was one overall conspiracy as alleged in Count 1 and that a particular defendant was a member of that conspiracy, you should find that defendant guilty of Count 1.

If you find beyond a reasonable doubt that there were two or more conspiracies and that a particular defendant was a member of one or more of these conspiracies, you may find that defendant guilty of Count 1 only if you further find beyond a reasonable doubt that this proven conspiracy was included within the conspiracy alleged in Count 1.

If, on the other hand, the proven conspiracy is not included within the conspiracy alleged in Count 1, you should find the defendant not guilty of Count 1."

so based on my advice as his lawyer. It's my opinion that the evidence is so weak that he did not need to take the stand."

The defendant appears to be confusing the prohibition against direct or indirect references by a prosecutor to a defendant's decision not to testify with some imagined rule that applies with equal force to his defense counsel. *United States v. Lyon,* 397 F.2d 505, 509 (7th Cir.), *cert. denied,* 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (1968). However, the defendant does not cite, nor have we discovered, any case law that applies to defense counsel. Because the defendant did not testify at trial, nor call any witnesses, the defendant's counsel's explanation of why his client decided not to testify was proper and further counsel appropriately tailored the standard jury instruction relating to trial situations where a defendant has not testified.[4] Indeed, the defense counsel made a reasonable decision to explain to the jury what the judge would instruct minutes later: that the defendant had an absolute right not to testify and that the jury was not to hold his silence against him. Thus, under the factual situation in the case before us we are of the opinion that the defendant suffered no prejudice.

### C. "Cumulative Effect"

The defendant's final argument is that the cumulative effect of his trial counsel's "errors" was so prejudicial that he was denied effective assistance of counsel. However, the defendant only rehashes his previous arguments, arguments that we have previously determined to be without merit. Yet as a different approach, the defendant suggests that his trial counsel's decision to rest his case without introducing evidence resulted in ineffective assistance of counsel. However, as the defendant notes in his brief, "Counsel's decision to rest without presenting any evidence does not, by itself amount to ineffective assistance of counsel." *United States v.*

*Curtis,* 742 F.2d 1070, 1074 (7th Cir.1984), *cert. denied,* 475 U.S. 1064, 106 S.Ct. 1374, 89 L.Ed.2d 600 (1986). From our review we are of the opinion that the defendant has failed to present any examples of prejudicial or ineffective conduct by his trial counsel, and because we are convinced that his previous arguments were meritless, the defendant's final argument that the cumulative effect of his trial counsel's errors prejudiced him also fails.

### IV. CONCLUSION

The defendant has failed to demonstrate that his trial counsel's representation was ineffective under the *Strickland* test. Therefore, his conviction is

AFFIRMED.

---

**4.** The Federal Criminal Jury Instruction of the Seventh Circuit § 3.14 provides:

 "FAILURE OF DEFENDANT TO TESTIFY

 The defendant has an absolute right not to testify. The fact that the defendant did not testify should not be considered by you in any way in arriving at your verdict."