Omar GOLDWIRE, a/k/a Mike Cook

v.

Loius FOLINO; The District Attorney of the County of Philadelphia; The Attorney General of the State of Pennsylvania; John A. Palakovich

Omar Goldwire, Appellant.

No. 06–3384.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) April 14, 2008.

Filed: April 16, 2008.

Stephen J. Britt, Blue Bell, PA, for Appellant.

Thomas W. Dolgenos, Office of District Attorney, Philadelphia, PA, for Appellee.

Before: SLOVITER, JORDAN, and ALARCÓN,* Circuit Judges.

* Hon. Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

## OPINION

SLOVITER, Circuit Judge.

Omar Goldwire appeals the District Court's denial of his petition for writ of habeas corpus, arguing on appeal that his trial counsel was ineffective for telling the jury that Goldwire would not testify to avoid implicating his brother and for failing to object to the prosecutor's statement regarding Goldwire's failure to testify as exceeding a fair response. We will affirm.

## I.

On February 17, 1997, Goldwire led Juakeim Bates and his two companions, who were looking to buy drugs, to a supposed drug dealer living on Mt. Vernon Street in Philadelphia, PA. Before finding the drug dealer, Goldwire entered his own home at 3820 Wallace Street to retrieve a gun, and returned with co-defendant Montrell Oliver and someone identified as Jimmy following from a distance. After Bates and Goldwire exited the car and knocked on some doors in apparent search of the drug dealer, Bates re-entered the car. Oliver and Jimmy then approached and fired at Bates, who was fatally shot as the car sped away. Bates' two companions later testified at trial that they also saw Goldwire firing a gun at the car. Goldwire was arrested an hour later when he returned with his brother Khalif and Marcus Best to the gas station where he first saw Bates. Goldwire denied any participation in the shooting and attempted robbery.

After trial in a Pennsylvania trial court, the jury convicted Goldwire of various crimes, including first-degree murder, aggravated assault, and robbery. The jury deadlocked on the penalty phase; thus the trial court sentenced Goldwire to life imprisonment, and the Superior Court affirmed. Goldwire filed a PCRA petition, which was denied. The Superior Court affirmed, and the Pennsylvania Supreme Court denied allocatur. Goldwire then filed a pro se petition for a writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania. The Magistrate Judge issued a report and recommendation that the District Court should dismiss Goldwire's petition, which the District Court approved and adopted. This court granted a certificate of appealability on two issues of ineffective assistance of counsel.

## II.

The District Court exercised jurisdiction over Goldwire's petition under 28 U.S.C. § 2254(a). We have jurisdiction over the District Court's final order pursuant to 28 U.S.C. §§ 1291 and 2253. "Where, as here, a district court dismisses a habeas petition based solely on a review of the state court record without holding its own evidentiary hearing, our standard of review of the district court's determination is plenary." *Marshall v. Hendricks,* 307 F.3d 36, 50 (3d Cir.2002).

■ Goldwire's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2241–2255. Where a claim was adjudicated on the merits in state court proceedings, federal habeas corpus relief will only be granted if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* at § 2254(d)(1). To demonstrate ineffective assistance of counsel, Goldwire must show both that his counsel's performance was lacking and that this deficient performance resulted in prejudice. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Goldwire first argues that counsel was ineffective for suggesting that Goldwire

would not testify at trial. In his opening statement, Goldwire's counsel stated:

> It's a house divided.... Maybe [Goldwire] gets off, but [Khalif Goldwire] gets arrested. If the mother says something, maybe they let Omar off and they arrest [Khalif] now. And my client, he's the older brother, his father is dead. He doesn't want to take the stand and snitch on his brother. He just doesn't want to. I'm still trying to convince him, but he just doesn't want to.

App. at 21. The prosecutor responded to this statement in his closing argument:

> Well, number one, you don't know why Omar Goldwire didn't take the stand. What you do know is anyone who takes the stand is subject to cross examination and everything about him comes out, who they are and what they are all about. So there could be a lot [of] reasons why Omar Goldwire wouldn't want to take the stand and testify, but I submit to you it's not because he points the finger at his brother and possibly becoming a witness against Khalif at some other trial. That's what they want you to believe.

App. at 21.

On PCRA review, the Pennsylvania Superior Court rejected Goldwire's claim because it found trial counsel had a "reasonable trial strategy," App. at 37, which was "to suggest a case of mistaken identity and to place the blame on [Goldwire]'s brother, Khalif," App. at 36. The court cited *Commonwealth v. Howard*, 553 Pa. 266, 719 A.2d 233, 237 (1998), for the proposition that where matters of strategy are at issue, counsel's assistance is generally deemed constitutional unless a viable alternative defense was suggested that offered substantially greater potential for success than the chosen course. Here, the Superior Court found that Goldwire "failed to indicate what alternative strategy offered a potential for success greater than the course chosen by his trial counsel." App. at 37.

Pennsylvania's standard for evaluating ineffective assistance claims is identical to the federal standard. *See Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 976–77 (1987). Thus, the Pennsylvania court did not apply a rule of law that contradicts the Supreme Court's holding in *Strickland*. We also do not find that "the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under *Strickland*." *Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir.2000).

The Supreme Court's decision in *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), established the general rule that comments by the prosecution or the court on a defendant's decision not to testify violate the Fifth Amendment. Here, "[t]he defendant appears to be confusing the prohibition against direct or indirect references by a prosecutor to a defendant's decision not to testify with some imagined rule that applies with equal force to his defense counsel." *United States v. Guerrero*, 938 F.2d 725, 731 (7th Cir.1991). Even if there were such a rule, "*Strickland* and its progeny make clear that counsel's strategic choices will not be second-guessed by *post-hoc* determinations that a different trial strategy would have fared better." *Rolan v. Vaughn*, 445 F.3d 671, 681–82 (3d Cir. 2006). Goldwire may rebut the presumption of reasonable professional conduct by "showing that no sound strategy posited by the [government] could have supported the conduct." *Thomas v. Varner*, 428 F.3d 491, 500 (3d Cir.2005).

Here, both the state Superior Court and the District Court concluded that defense counsel pursued a reasoned trial strategy in light of the evidence available, which

included two positive identifications by eyewitnesses to the shooting. In fact, in this court Goldwire concedes that trial counsel's overall strategy of presenting a mistaken identity defense was "perfectly sound" and that it might even have made "tactical sense" to assert in closing argument Goldwire's reason for not testifying. Appellant's Br. at 10–11. He objects, however, to counsel's inclusion of that assertion in his opening statement. It was not unreasonable strategy to begin with the theory of mistaken identity that defense counsel proffered at the outset of trial, and to attempt to portray Goldwire as an innocent man torn by the choice between his brother's liberty or his own.[1] We agree with the District Court that under the facts of this case, the Pennsylvania Superior Court's determination that trial counsel rendered effective assistance was not an unreasonable application of *Strickland.*

■ With respect to the second claim of ineffective assistance—that counsel failed to object to the prosecutor's closing remarks regarding Goldwire's failure to testify—the government argues at length that this claim is waived and/or procedurally defaulted.[2] However, we find it unnecessary to decide this issue because it is apparent that the claim lacks merit. "Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here."[3] *Bronshtein v. Horn,* 404 F.3d 700, 728 (3d Cir.2005).

The Supreme Court has explained that "[w]here the prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence, *Griffin* holds that the privilege against compulsory self-incrimination is violated. But where as in this case the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel, we think there is no violation of the privilege." *United States v. Robinson,* 485 U.S. 25, 32, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988).

Although the prosecutor's statement may come close to violating *Griffin,* when it is considered in context, we conclude that it was a fair response to defense counsel's opening statement.[4] The prose-

---

1. Even if this strategy was considered defective, however, Goldwire has not shown prejudice, which requires a finding that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. We must consider the totality of the evidence at trial: " 'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.' " *United States v. Gray,* 878 F.2d 702, 711 (3d Cir.1989) (quoting *Strickland,* 466 U.S. at 696, 104 S.Ct. 2052). Here, Goldwire admitted to police that he had taken Bates to Mt. Vernon Street, and the Commonwealth presented two eyewitnesses who testified that Goldwire had participated in the shooting.

2. The PCRA court rejected Goldwire's claim on the merits. The government contends Goldwire subsequently failed to properly pres-

ent this claim to the Superior Court, and failed to raise it in his federal habeas petition.

3. Furthermore, potential waiver is not a jurisdictional impediment to review, and Goldwire was proceeding pro se in the District Court. Thus, we have given him the benefit of the doubt and have reviewed his claim on the merits.

4. In fact, Goldwire's PCRA appellate counsel admitted as much in his brief to the Superior Court, in which he challenged trial counsel's effectiveness in opening the door to the prosecutor adversely commenting on Goldwire's failure to testify: "[Goldwire] cannot complain about [the prosecutor's closing statements] as being error—it was invited comment, pure and simple.... [T]he prosecutor was entitled to run through the wide open door provided for him by trial counsel." Supp.App. at 106–07.

cutor's statement was in direct response to defense counsel's assertion that Goldwire did not testify only because he refused to implicate his brother; the prosecutor was entitled to respond to this assertion after defense counsel had opened the door. *See id.* at 33, 108 S.Ct. 864 (in order for the jury to determine defendant's guilt or innocence, "it is important that both the defendant and the prosecutor have the opportunity to meet fairly the evidence and arguments of one another"); *United States v. Isaac,* 134 F.3d 199, 206 (3d Cir.1998) ("[W]hen the defendant uses his *Griffin* protection as a sword, rather than a shield, the prosecution may respond appropriately."). As the Supreme Court explained:

It is one thing to hold, as we did in *Griffin,* that the prosecutor may not treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt; it is quite another to urge, as defendant does here, that the same reasoning would prohibit the prosecutor from fairly responding to an argument of the defendant by adverting to that silence. There may be some "cost" to the defendant in having remained silent in each situation, but we decline to expand *Griffin* to preclude a fair response by the prosecutor in situations such as the present one.

*Robinson,* 485 U.S. at 34, 108 S.Ct. 864.[5]

### III.

For the above-stated reasons, we will affirm the judgment of the District Court denying Goldwire's § 2254 petition.

---

5. Furthermore, even if the prosecutor's remarks exceeded the bounds of a fair response, Goldwire has not shown prejudice. *See supra* note 1. The trial court also instructed the jurors that arguments made by both defense counsel and the prosecutor were not evidence.

