Daniel R. POTTER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 57S04–9608–CR–548.

Supreme Court of Indiana.

Aug. 25, 1997.

Susan K. Carpenter, Public Defender, and Gregory L. Lewis, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Attorney General, and Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for appellee.

## ON PETITION TO TRANSFER

SELBY, Justice.

Daniel R. Potter ("Potter") was convicted of Rape, a Class A felony; Criminal Confinement, a Class B felony; Intimidation, a Class C felony; and Battery, a Class A misdemeanor. On appeal, the Court of Appeals affirmed in part, but reversed and remanded the Class A felony Rape conviction on the grounds of ineffective assistance of counsel. *Potter v. State,* 666 N.E.2d 93 (Ind.Ct.App. 1996). Both the State and Potter petitioned this Court for transfer. In sum, the parties' transfer claims ask that we address the three original claims raised by Potter in the Court of Appeals. We granted transfer and now consider Potter's three claims: (1) whether Potter received ineffective assistance of counsel; (2) whether Potter was subjected to double jeopardy; and (3) whether there was insufficient evidence to convict Potter of rape. Because we answer each claim in the negative, we affirm the trial court's ruling.

## FACTS[1]

On April 2, 1994, Wendy Potter was with her two daughters, Morgan and Katie, in their small, two bedroom mobile home. Wendy and Morgan were both sick with the flu. Throughout the day, Potter continuously called Wendy (to whom he had been married and divorced three times). During the calls he would beg to be allowed back into Wendy and his daughters' lives, and then he would stay on the phone line even after Wendy hung up. In the past when Potter had begged for a reconciliation, Wendy had given in because she felt it was easier than fighting.

Toward the evening, Potter arrived at Wendy's home and was let in by Morgan. Wendy repeatedly asked Potter to leave, but he refused. Wendy tried to call the police, but, as Potter admitted to Wendy, the phone line was dead. All this time Potter was abnormally calm. Wendy then attempted to get out of her home, but Potter stopped her, and jumped on her, and beat her face, neck, and hands with his fists. Both girls yelled and begged Potter to stop beating their mother.

Eventually Potter stopped hitting Wendy and again became abnormally calm. However, he then pulled out a knife and sat in a chair in front of the door. Potter told Wendy that he was going to kill her, the children, and himself. In response to these threats, Wendy told Potter that she would take him back. After a while, Potter took the knife into the kitchen area, and then returned to the chair blocking the front door. Wendy felt that she could not safely exit her home.

Potter demanded that Wendy have sex with him. Wendy refused several times, telling him that she did not want to and that she was sick with the flu; Potter, however, persisted in his demands. Wendy finally acquiesced because she felt that, for her and her children's safety, she had no choice but to allow Potter to have sexual intercourse with her. Afterwards, Wendy fell asleep on

---

1. Potter's counsel asks us to consider the Court of Appeals' ruling that Potter's statement of facts failed to comply with the appellate rules. *Potter,* 666 N.E.2d at 96 n. 6. The Court of Appeals is correct in that Appellate Rule 8.3(A)(5) calls for a statement of facts, and that a summary of witness testimony does not adequately fulfill that requirement. *See Nehi Beverage Co., Inc. v. Petri,* 537 N.E.2d 78, 82 (Ind.Ct.App.1989). We also understand the frustration which the Court of Appeals encounters when it receives a witness summary rather than a "statement of the facts." While one must peruse through Potter's statement of the facts section of the brief in order to determine what actually occurred, the facts are eventually presented in a narrative fashion. (Court of Appeals Brief of Appellant at 9.) Thus, the brief submitted by Potter is not entirely of the same character as those the Court has rebuked in the past. Nevertheless, the Court of Appeals did address the merits of the appeal. *Potter,* 666 N.E.2d at 96 n. 6.

the love seat while Potter fell asleep on the floor near the front door. The next morning, Wendy convinced Potter to reconnect the phone. Potter then took Morgan with him to go and get his car. While they were gone, Wendy called the police.

Potter was charged with rape, a Class A felony; criminal confinement, a Class B felony; intimidation, a Class C felony; and battery, a Class A misdemeanor. He was also charged as a habitual offender. The jury found him guilty of all four crimes, and he was found to be a habitual offender.

## DISCUSSION

### I. Ineffective Assistance of Counsel

Potter first claims that he received ineffective assistance of counsel during his trial, and therefore the results of the trial should be reversed. Potter raises eight alleged separate instances of ineffective representation. Potter alleges that his attorney was ineffective for: (a) failing to object to a rape jury instruction; (b) stating in front of the jury that, against the attorney's advice, Potter would not testify; (c) failing to object to prior misconduct evidence; (d) failing to object to portions of the State's final argument; (e) failing to object to hearsay evidence; (f) failing to tender an instruction defining "knowingly" and "intentionally"; (g) failing to tender a "mistake of fact" instruction; and (h) the cumulative effect of all attorney errors.

■ In order to prove a claim of ineffective assistance of trial counsel, a defendant must prove both parts of the two part test as set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, a defendant must show that his counsel's actions fell below an objective standard of reasonableness under prevailing professional norms. Next, a defendant must show that the substandard performance was so prejudicial as to deny the defendant a fair trial. *Steele v. State,* 536 N.E.2d 292 (Ind. 1989). A defendant is denied a fair trial only when a conviction occurs as the result of a breakdown in the adversarial process rendering the trial result unreliable. *Marshall v. State,* 621 N.E.2d 308 (Ind.1993). To demonstrate that a trial result is unreliable, a de-

fendant must show a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. *Spranger v. State,* 650 N.E.2d 1117, 1121 (Ind. 1995). Counsel is presumed to be competent, and in order to rebut the presumption, a defendant must present strong and convincing evidence otherwise. *Clark v. State,* 561 N.E.2d 759, 763 (Ind.1990).

### A.

■ Potter argues that several discrete aspects of his trial representation rendered such representation ineffective. We first address that aspect of Potter's ineffective assistance claim upon which the Court of Appeals reversed and remanded. Potter argues that his counsel was ineffective for failing to object to a jury instruction defining the crime of rape. Specifically, Potter alleges that the jury instruction defined rape broader than did the charge contained in the information, thus allowing the jury to convict him of a type of rape not charged against him. Final Instruction # 8 reads in pertinent part:

> Count I—The crime of Rape, Class "A" Felony, as charged by the Information, is defined by statute as follows: A person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when: (1) The other person is compelled by force or imminent threat of force; commits Rape, a Class "B" Felony. However, the offense is a Class "A" Felony *if it is committed by using or threatening the use of deadly force, if it is committed while armed with a deadly weapon, or if it results in serious bodily injury to a person other than a defendant.*

(R. at 251.) (emphasis added.) The charging information reads in pertinent part:

> Count I: RAPE, Class A Felony: Richard L. Anderson, being duly sworn upon his oath, says that: On or about the 2nd day of April, 1994, in Noble County, State of Indiana, DANIEL R. POTTER, *while armed with a deadly weapon, to-wit: a knife,* did knowingly or intentionally have sexual intercourse with Wendy Potter, a member of the opposite sex, the said Wendy Potter being compelled by the immi-

nent threat of force to have sexual intercourse with Daniel R. Potter.

(R. at 10.) (emphasis added.) Thus, Final Instruction # 8 informed the jury of the three possible means of elevating rape to a class A felony, while the charging information was limited to just one, armed with a deadly weapon.

■ In order to establish that counsel's failure to object to a jury instruction was ineffective assistance of counsel, a defendant must first prove that a proper objection would have been sustained. *Barany v. State,* 658 N.E.2d 60, 66 (Ind.1995). Furthermore, defendant must prove that the failure to object was unreasonable and resulted in sufficient prejudice such that there exists a reasonable probability the outcome would have been different. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The Court of Appeals relied upon *Kelly v. State,* 535 N.E.2d 140 (Ind.1989) to hold that Potter had received ineffective assistance of counsel. *Potter,* 666 N.E.2d at 103. In *Kelly,* the defendant was charged with criminal confinement in that he "knowingly confined [victim] without [victim's] consent." *Id.* at 141. Over defendant's timely objection, the court gave final jury instructions which defined criminal confinement as "confining another without consent" *or* "removing another person by fraud, enticement, force, or threat of force, from one place to another." *Id.* In essence, the court read to the jury the statutory definition of criminal confinement [2] which contained two types of criminal confinement, one by confinement and the other by removal, while the charge was limited to that by confinement. In a general verdict, the jury found defendant guilty of criminal confinement. *Id.* at 142.

This Court in *Kelly* found that defendant had been subjected to prejudicial error due to the jury instruction. *Id.* at 143. The evidence presented at trial and argued by the State could have equally supported either theory of criminal confinement, and the verdict did not specify which. Thus, this Court held that defendant had been prejudiced be-

cause he was entitled to know the offense charged against him and to be convicted only of the crime charged against him. *Id.*

■ However, prejudicial error does not arise solely because a jury instruction has been given in the language of the statute which is broader than the crime as charged. The defendant is not prejudiced by such an erroneous instruction if there is no evidence in the record to support the uncharged portions of the crime. *Dixon v. State,* 425 N.E.2d 673, 678 (Ind.Ct.App.1981). Also, the defendant is not prejudiced if the jury is expressly informed of the specific crime charged against defendant and that the State must prove the material allegations of that charge beyond a reasonable doubt before the jury may convict. *Id.; McIntosh v. State,* 638 N.E.2d 1269, 1275 (Ind.Ct.App.1994); *see Evans v. State,* 571 N.E.2d 1231, 1235 (Ind. 1991). If, along with the erroneous final instruction, the jury is plainly made aware (for example by an express or referential reading of the charging information) that the jury can only convict upon a finding that defendant committed the specific acts charged in the information, then there is no prejudice. *See Evans,* 571 N.E.2d at 1235; *McIntosh,* 638 N.E.2d at 1275; *Dixon,* 425 N.E.2d at 678.

The record in the case at bar establishes that Potter was not prejudiced by the erroneous instruction, and, therefore, he did not receive ineffective assistance of counsel. Potter is correct that the jury was read, in final instruction # 8, the complete statutory definition of rape. Also, Potter is correct that the evidence presented and argued at trial could have supported both the charged and uncharged means of committing rape. However, that is not the extent of our inquiry. The jury was instructed in Final Instruction # 3 that they are to "consider all the instructions as a whole and are to regard each with the others given to you." (R. at 243.) Furthermore, the jury was read in Final Instruction # 6 a verbatim account of the charging information. (R. at 10, 247.) Finally, the jury was read in Final Instruction # 23, and received in writing as Verdict

2. Ind.Code § 35–42–3–3(a) (1986).

Form Count I, the conviction option of "We the jury find the Defendant, Daniel R. Potter, guilty of *Count I of the Information,* Rape, a Class "A" Felony." (R. at 270, 272.) (emphasis added.) Thus, although Potter's counsel may have erred in not objecting to Final Instruction #8, Potter cannot show that he was prejudiced. The jury was aware of the exact crime charged against Potter and that his conviction was solely for that crime. Potter did not receive ineffective assistance of counsel on this claim.

## B.

■ Potter next claims that he received ineffective assistance of counsel when his attorney, at the close of the State's case and in front of the jury, stated that "[A]gainst my advice Mr. Potter does not wish to testify today and the defense rests." (R. at 669.) Even though the trial judge immediately admonished the jury, Potter argues that this statement prejudiced him because it implied to the jury that he had something to hide. This action, he contends, violated his constitutional right to refrain from giving incriminating evidence against himself.

■ Each defendant has a constitutional right not to testify in his own defense. *Parsons v. State,* 472 N.E.2d 915, 916 (Ind. 1985). As a general rule, no comment which may be interpreted as a comment upon a defendant's failure to testify is permissible. *Id.* The State cannot create an inference of guilt by making comments on defendant's exercise of his constitutional right. However, the line of Indiana cases which support this argument refer to situations where the State or the court has made the potentially damaging comments. *See Jones v. State,* 267 Ind. 680, 372 N.E.2d 1182, 1185 (1978); *see also United States v. Guerrero,* 938 F.2d 725 (7th Cir.1991) (noting that a perusal of federal case law also showed that the proposition only applied to comments by the government). The Seventh Circuit has held that comments by defense counsel which refer to defendant's right not to testify do not qualify as ineffective assistance of counsel when no

prejudice resulted. *United States v. Allison,* 59 F.3d 625 (7th Cir.1995); *Guerrero,* 938 F.2d at 731 (7th Cir.1991). We agree. Potter attempts to equate the prejudice which results from prosecutorial comments on the right not to testify with what happened in this case. He is incorrect. The statements did not create impermissible inferences of guilt. Furthermore, the jury was immediately admonished and the evidence was already substantially weighted against Potter's innocence.

## C.

■ Potter's next contention is that his counsel was ineffective for failing to object to evidence of his prior misconduct. Potter raises numerous instances where he alleges his counsel did not object to the State's eliciting "damning evidence of Potter's alleged uncharged misconduct" from witnesses. (Ct. of App. Brief of Appellant at 16.) His argument is that he was prejudiced because the jury took these incidents into account when convicting him.

■ Even assuming that some or all of the instances Potter cites to were inadmissible,[3] we must also note that fact alone does not prove ineffective assistance. This proposition is especially true if counsel's failure to object was the result of trial strategy. While "an attorney's performance during trial may be criticized, isolated poor strategy, inexperience, or bad tactics do not necessarily constitute ineffective assistance of counsel." *Douglas v. State,* 663 N.E.2d 1153, 1154 (Ind. 1996). There is no one way to defend a particular defendant, and so a reviewing court must grant the trial attorney significant deference in choosing a strategy which, at the time and under the circumstances, he or she deems best. *See Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. at 2065. As section I(H) will discuss in depth, counsel chose a course of action that, if not conventional, at the very least did not render the trial result unreliable.

---

**3.** For example, under Indiana Rules of Evidence § 404, a party may not introduce evidence of a person's character, or of other crimes, wrongs or acts committed, for the purpose of proving that the current action conformed with that character or previous acts. EVID.R. 404(a), (b).

### D.

Potter also claims that he received ineffective representation when his counsel failed to object to portions of the State's closing argument. During the State's argument on the Intimidation charge, the prosecutor provided the jury with examples of conduct from which they could convict Potter of Intimidation. "For example, don't answer the door or I will kill you. For example, I will kill you and the kids unless you take me back." (R. at 675.) Potter argues that these examples went beyond the evidence and therefore prejudiced him.

To prove ineffective assistance for failure to object to the State's closing argument, a defendant must prove that his objections would have been sustained, that the failure to object was unreasonable, and that he was prejudiced. *Sevits v. State,* 651 N.E.2d 278, 283 (Ind.Ct.App.1995); *see also Burris v. State,* 558 N.E.2d 1067, 1072 (Ind. 1990); *Siglar v. State,* 541 N.E.2d 944, 947 (Ind.1989). During closing argument, a "prosecutor may argue both law and facts and propound conclusions based upon his or her analysis of the evidence. It is proper to state and discuss the evidence and all reasonable inferences to be drawn therefrom, provided the prosecutor does not imply personal knowledge independent of the evidence." *Marsillett v. State,* 495 N.E.2d 699, 708 (Ind. 1986). In the case at bar, the prosecutor's comments were supported by the record and any objection would have been overruled. Therefore, there was no error.

### E.

Potter further claims that he received ineffective assistance when his counsel did not object to hearsay statements made at trial by the responding police officer. Potter points to three episodes where he believes his counsel prejudiced him by not objecting: first, when Officer Anderson told the jury of his interviews with Wendy and the children; second, when Officer Anderson told of a threat made against him by Potter to another officer; and last, when Officer Anderson told of statements made by neighbors of Wendy describing how they were scared of Potter.

To prove that ineffective representation resulted from the failure to object to hearsay statements, a defendant must prove that an objection would have been sustained, that the failure to object was unreasonable, and that he was prejudiced. *Thompson v. State,* 671 N.E.2d 1165, 1170 (Ind.1996). Hearsay statements made by one witness are not prejudicial if the original declarant testifies to the same statements. *Id.* There is no prejudice because the statements are subject to cross-examination and the hearsay statements are made superfluous.

Assuming that any or all of the alleged statements were hearsay and thus an objection would have been sustained, we must determine if Potter was prejudiced. We determine that he was not because Wendy, Morgan and Katie, and the neighbors all testified and were cross-examined as to the same information presented by Officer Anderson's testimony. Thus, Officer Anderson's testimony was simply repetitious. Also, the reference to Potter's statement about Officer Anderson was irrelevant to any issue in the case. Finally, the evidence against Potter was substantial regardless of Anderson's statements.

### F.

Potter next argues that his counsel rendered ineffective assistance by not requesting a jury instruction defining the "knowingly" and "intentionally" elements of the rape instruction. Specifically, Potter alleges that he was entitled to have the jury hear the definitions and be instructed that those mens rea elements applied to every element of the offense. Once again, Potter must show that counsel unreasonably failed to request a proper instruction and that Potter was prejudiced by the failure to request the instruction. *See Clemens v. State,* 610 N.E.2d 236, 244 (Ind.1993).

In response to Potter's contention that he was entitled to a jury instruction defining "knowingly" and "intentionally," Potter is correct in that a trial court should define those words to a jury. *Abercrombie v. State,* 478 N.E.2d 1236, 1239 (Ind.1985). However, Final Instruction # 6 and # 8 did inform the

jury that Potter had to commit the crimes with a knowing or intentional state of mind. Thus, sufficient prejudice for reversal is not shown. *See id.* As to Potter's second argument, that he was entitled to an instruction informing the jury that the *mens rea* elements applied to every element of the offense (including the use of a deadly weapon), the instructions made it sufficiently clear to the jury that Potter had to have used the knife in order to commit the crime. Thus, Potter was not prejudiced.

#### G.

 Next, Potter contends that he received ineffective assistance of counsel because his counsel did not tender a jury instruction defining the mistake of fact defense. He argues that he believed that Wendy had consented to have sex, and therefore he could not be convicted of Rape. To prevail on his claim, Potter must prove that he was entitled to the defense and that he was prejudiced when the jury was not instructed on the defense. *Smith v. State,* 547 N.E.2d 817, 820 (Ind.1989).

 "A defendant is entitled to an instruction on any defense which has some foundation in the evidence." *Id.* In order that mistake of fact[4] be a valid defense, three elements must be satisfied: (1) that the mistake be honest and reasonable; (2) that the mistake be about a matter of fact; and (3) that the mistake negate the culpability required to commit the crime. *Smith v. State,* 477 N.E.2d 857, 863 (Ind.1985). While Potter may convince a court that his mistake was "honest," he cannot show that it was "reasonable." The "reasonableness" prong inquires what a reasonable person in defendant's position would think. *Davis v. State,* 265 Ind. 476, 355 N.E.2d 836, 839 (1976). We must, thus, ask whether a reasonable person would believe that another had consented to have sex with them when the other was trapped with her two young children in a small home with a disconnected phone and had just before been beaten and threatened with a knife by the person asking to have sex. We think not. Moreover, the facts are not so clear as to show that Potter was entitled to the defense. *See Boyd v. State,* 564 N.E.2d 519, 522 (Ind.1991). This is true regardless of Potter and Wendy's prior history. Potter cannot show that he was entitled to the defense and, thus, he did not receive ineffective assistance of counsel.

#### H.

 Finally, Potter argues that the cumulative effect of his counsel's errors rendered the representation ineffective. Just as with all other claims of ineffective assistance of counsel, Potter must show that there existed cumulative errors in his counsel's performance and that such errors resulted in prejudice. *Siglar v. State,* 541 N.E.2d 944, 948 (Ind.1989). As the United States Supreme Court stated in *Strickland,* "[t]aking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Strickland,* 466 U.S. at 696, 104 S.Ct. at 2069.

As discussed in the previous sections, there were isolated moments when Potter's trial counsel made what Potter might now term "mistakes." However, in looking at the record as a whole, we cannot say that these isolated mistakes rendered the representation ineffective. Counsel was presented with a situation where the damning evidence against his client was unrefuted. As counsel's closing argument made clear, his chosen strategy was to elicit and allow sometimes inadmissible evidence in the hopes of highlighting inconsistencies and past history, thereby discrediting Wendy's testimony and casting doubts in the jury's mind about whether the crimes actually occurred. This may not have been the best strategy, but we cannot necessarily say that it was unreasonable. Furthermore, given the unrefuted testimony of Wendy, we cannot say that, without any potential cumulative errors, the jury would have reached a different result.

---

4. I.C. § 35–41–3–7 (1986).

## II. Double Jeopardy

 Potter next argues that his convictions for Rape and Intimidation violate his constitutional right not to be convicted twice of the same crime. He alleges that the State argued its case in such a manner that the two crimes became a single crime. Specifically, Potter argues that the same facts, the threats against Wendy, were used to support both his Rape and Intimidation convictions. Thus, Potter asserts that his convictions violated the prohibition against double jeopardy.[5]

 The prohibition against double jeopardy is a constitutional rule which prevents a defendant from being punished twice for the same offense. See Grinstead v. State, 684 N.E.2d 482, 485 (Ind.1997). We determine whether a defendant's double jeopardy rights have been violated in this manner by examining the statutes of the two crimes in question. Id. (citing Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)). In order to determine whether the statutory offenses are in fact the same, we ask whether each statutory provision requires proof of an additional fact which the other does not. Id.

In the present case, Potter questions his Rape and Intimidation convictions. Rape is defined by statute as: "A person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when: (1) the other person is compelled by force or imminent threat of force; . . . commits rape, a Class B felony. However, the offense is a Class A felony if it is committed . . . while armed with a deadly weapon." I.C. § 35–42–4–1 (1986). Intimidation is defined by statute as: "(a) A person who communicates a threat to another person, with the intent that: (1) the other person engage in conduct against his will; . . . commits intimidation, a Class A misdemeanor. (b) However, the offense is a: . . . (2) Class C felony if, while

committing it, the person draws or uses a deadly weapon." I.C. § 35–45–2–1 (1986).

We find no double jeopardy violation. The Rape offense requires the State to prove that sexual intercourse occurred. The Intimidation offense requires the State to prove that Potter communicated a threat to another. Neither contains the other's factual element. The two, therefore, are not the same offense.

## III. Sufficiency of the Evidence

 Finally, Potter argues that there was not enough evidence presented at trial for the jury to be able to find him guilty of his rape conviction. Potter was charged and convicted of Rape, a Class A felony. This charge requires that the State prove Potter was armed with a deadly weapon while he committed the rape. Potter argues that, because he no longer had possession of the knife at the time of the alleged rape, there was insufficient evidence to convict him of the crime as charged.

 When addressing a sufficiency of the evidence claim, this Court will neither reweigh the evidence nor review the credibility of the witnesses. Kingery v. State, 659 N.E.2d 490, 493 (Ind.1995). Instead, we look to the evidence most favorable to the verdict as well as all reasonable inferences derived therefrom. From that inquiry we "determine whether there is substantial evidence of probative value from which the trier of fact might reasonably have found the defendant guilty beyond a reasonable doubt." Id. If so, we will sustain the judgment. Id. Also, "a rape conviction may rest solely on the uncorroborated testimony of the victim." Wooden v. State, 657 N.E.2d 109, 111 (Ind. 1995). In order to convict Potter of rape as charged, the State must have proved that Potter knowingly or intentionally had sexual intercourse with Wendy Potter, that she was compelled by force or the imminent threat of force, and that Potter was armed with a knife. I.C. § 35–42–4–1. The point of contention is the elevating factor of the knife.

---

5. Potter argues that his double jeopardy rights have been violated under the Indiana Constitution. (Ct. of App. Brief of Appellant at 45.) However, he does not cogently argue whether or why a separate approach to double jeopardy would be appropriate under the Indiana and Federal Constitutions. Without such an argu-

ment, and because defendant raises a double jeopardy issue, we will analyze the claim as we would a federal double jeopardy claim. See Games v. State, 684 N.E.2d 466, at 473 n. 7 (Ind.1997); Gregory–Bey v. State, 669 N.E.2d 154, 157 n. 8 (Ind.1996).

When Rape is elevated to a Class A felony due to the use of a deadly weapon, it is not necessary for the State to show that the weapon was held on the victim at all times. *Taylor v. State,* 438 N.E.2d 294, 296 (Ind.1982). In reviewing a sufficiency of the evidence claim concerning whether a defendant was armed with a deadly weapon, this Court looks to such factors as whether there was an initial show of deadly force with the weapon, whether the intent was to intimidate the victim with the weapon, and whether the weapon was at least constructively under defendant's control at all times. *Davis v. State,* 520 N.E.2d 1271, 1274 (Ind.1988); *Taylor,* 438 N.E.2d at 296.

In the present case, this Court finds that there was sufficient evidence for a jury to convict Potter of Rape, a Class A felony. At one point in the evening, Potter pulled out a knife that he had hidden in his pants. He then sat in a chair in front of the door and held the knife threateningly. He spoke to Wendy about killing her, the kids, and then himself. Wendy thought that he was going to kill her. It is true that Potter eventually put the knife somewhere in the kitchen.[6] However, it is also true that Wendy's home is very small, and that the kitchen is just a separate area of the living room (where the sexual act occurred). Given these facts, we find that there existed sufficient evidence for the jury to find that Potter committed Rape while armed with a deadly weapon.

### CONCLUSION

We find that Potter received effective assistance of counsel. We further conclude that Potter's Intimidation and Rape convictions did not violate double jeopardy and that there existed sufficient evidence for the jury to convict him of Rape, a Class A felony. We therefore vacate the Court of Appeals' decision and affirm the trial court.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.

---

6. Contrary to what the State writes in its brief, Wendy Potter did testify that she saw Potter take the knife to the kitchen and that she did believe it was there while they were having sex.