**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**PAULA M. SAUER**
Danville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana



FILED

Apr 19 2013, 9:59 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

PHILIP M. REED,                    )
                                   )
    Appellant-Defendant,          )
                                   )
        vs.                        )       No.  32A05-1208-CR-426
                                   )
STATE OF INDIANA,                  )
                                   )
    Appellee-Plaintiff.           )

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Mark A. Smith, Judge
Cause No. 32D04-1102-FC-36

**April 19, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

Philip M. Reed ("Reed") appeals his conviction, following a jury trial, for Class C felony operating a motor vehicle after driving privileges are forfeited for life.[1]

We affirm.

ISSUE

Whether Reed received effective assistance of trial counsel.

FACTS

On February 24, 2011, Reed had three prior Class D felony convictions for operating a vehicle as a habitual traffic violator ("HTV"), and his driving privileges had been forfeited for life. That evening, Reed; his girlfriend, Amanda Purtell ("Purtell"); and another couple, Michelle Willyard ("Willyard") and Joshua Casey ("Casey"); left Brazil, Indiana and went to Indianapolis to attend a concert. Purtell drove everyone to the concert in Reed's mother's car. At some point after they had arrived at the concert venue, they were asked to leave because Reed and Purtell were arguing.

The road conditions were icy when they left Indianapolis, and Reed, who was concerned about Purtell being able to drive in the icy conditions, decided to drive home. Reed, Purtell, Willyard, and Casey got into the car and headed west on Interstate 70 ("I-70"). While they were on I-70 in Hendricks County, the car hit an icy patch on the interstate, spun out, and slid into a median, causing extensive damage to the car. After the accident, Willyard "lost it" and asked to be dropped off so that she could get another

---

[1] Ind. Code § 9-30-10-17.

ride home. (Tr. 222). Purtell then drove the damaged car and dropped Willyard and Casey off at a Speedway gas station ("Speedway South station") near State Road 267.

Around 10:30 p.m., Plainfield Police Officer Ryan Salisbury ("Officer Salisbury") was dispatched to the Speedway South station on a report of a disturbance between two males and two females. Upon arriving at the gas station, Officer Salisbury was informed that one of the couples had gone to the McDonald's across the street while the other couple drove away in a red Dodge passenger car. Officer Salisbury then went to the McDonald's and spoke with Willyard. Willyard told Officer Salisbury that she and Casey had been in the red Dodge with Purtell and her boyfriend, who was driving the car when it crashed on I-70.

Thereafter, Officer Salisbury was dispatched to another Speedway gas station ("Speedway West station") near U.S. 40 and the Dan Jones Expressway upon a report that the damaged red Dodge had been located. When he arrived at the Speedway West station, Officer Salisbury saw Purtell sitting in the driver's seat and Reed sitting in the passenger seat of the damaged red Dodge. Reed initially told Officer Salisbury that he had not been driving the car and claimed that the damage to the car happened three weeks prior. However, Reed later admitted that he had driven the car.

Plainfield Police Officer Brian Stewart ("Officer Stewart") also spoke with Reed and videotaped the conversation in his police car. During the interview, Reed admitted that he was driving the car on I-70 when the car spun out on the icy highway and hit a median. Reed also admitted that his driving privileges had been forfeited for life, and

3

that he had driven the car despite having no license. Reed claimed that he drove the car only because he did not want Purtell to drive on the icy roads.

While at the Speedway West station, Officer Salisbury spoke with Purtell and videotaped his conversation with her. Purtell admitted that Reed had been driving at the time of the accident. She pleaded with the officer not to take Reed to jail and stated that she could "cover" for him and say she was driving the whole time. (State's Ex. 6).

The State charged Reed with Class C felony operating a motor vehicle after driving privileges are forfeited for life. On May 1, 2012, the trial court conducted a jury trial. Prior to trial, Reed stipulated that, on the date of the alleged offense, his "driving privileges were validly suspended and revoked for life after having been convicted as a habitual traffic violator under I.C. 9-30-10-16."[2] (App. 109). Thus, the only issue for trial was whether Reed operated a motor vehicle.

During opening statements, Reed's counsel made clear that Reed's defense was that the State could not prove that Reed was driving the car that night because no police officer would or could testify that they *saw* Reed drive the car. Reed's counsel stated that, instead, the other three people in the car—all of whom had "firsthand knowledge" as to who was driving the car—were going to testify that Purtell, not Reed, was driving the car at all times that night. (Tr. 167).

During cross-examination of Officer Salisbury, Reed's counsel asked the officer if Willyard had made any comments to him regarding whether anyone in the car had been drinking alcohol on the night of the accident, and Officer Salisbury responded, "She

---

[2] Reed stipulated that he had three prior Class D felony convictions for operating a vehicle as an HTV under Indiana Code § 9-30-10-16.

4

stated that they had gone to a concert[,] that the male driver that she did not identify at the time was driving erratically and that's why she wanted to get out to have a friend come give her a ride." (Tr. 187). At one other time during cross-examination and then during re-direct and re-cross examination, Officer Salisbury testified that all the people in the car had indicated that Reed was driving.

During Officer Stewart's direct examination, the State moved to introduce State's Exhibit 5, Reed's videotaped statement to police, wherein he admitted that he drove the car when it crashed. Reed's counsel objected based on hearsay, and the State argued that it was not hearsay and was admissible under Indiana Evidence Rule 801(d)(2) as a statement by a party-opponent. The trial court overruled Reed's objection and admitted State's Exhibit 5 into evidence.

After the State rested, Reed moved for a directed verdict, which the trial court denied. Thereafter, Reed presented testimony from Purtell, Willyard, and Casey, all of whom testified that Reed was not driving the car that night. When the State cross-examined these three witnesses about their prior statements to the police indicating that Reed was driving the car, they all testified that they were extremely intoxicated that night. These three witnesses all testified that they remembered talking to police but that they did not remember the content of their conversations with the police. More specifically, they did not remember making comments to police indicating that Reed was driving.

5

Reed also called Officer Salisbury as a witness during his case-in-chief. During the State's cross-examination of Officer Salisbury, the State introduced Exhibit 6, Purtell's videotaped interview with police in which she admitted that Reed was driving.

The jury found Reed guilty as charged. The trial court imposed a seven (7) year sentence to be executed at the Department of Correction. Reed now appeals his conviction, challenging the effectiveness of his trial counsel.

DECISION

Reed argues that he received ineffective assistance of trial counsel. Specifically, Reed contends that his trial counsel was ineffective for: (A) failing to object to the officers' testimony and to the admission of his videotaped confession; and (B) eliciting opinion testimony from Officer Salisbury during re-cross examination.

We evaluate claims concerning denial of the Sixth Amendment right to effective assistance of counsel using the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), *reh'g denied. Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007). A claim of ineffective assistance of trial counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant such that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 763 N.E.2d 441, 444 (Ind. 2002) (quoting *Strickland*, 466 U.S. at 687), *reh'g denied*, *cert. denied.* "A reasonable probability arises when there is a 'probability sufficient to undermine confidence in the outcome.'" *Grinstead v. State*, 845 N.E.2d

6

1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694). "Failure to satisfy either of the two prongs will cause the claim to fail." *Gulzar v. State*, 971 N.E.2d 1258, 1261 (Ind. Ct. App. 2012) (citing *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002)).

Before proceeding to Reed's specific allegations of error, we pause to note the procedural effect of Reed bringing his claims of ineffective assistance of trial counsel on direct appeal. While this practice is not prohibited, a post-conviction proceeding is generally "'the preferred forum'" for adjudicating claims of ineffective assistance of counsel because the presentation of such claims often requires the development of new facts not present in the trial record. *McIntire v. State*, 717 N.E.2d 96, 101 (Ind. 1999) (quoting *Woods v. State*, 701 N.E.2d 1208, 1219 (Ind. 1998), *reh'g denied*, *cert. denied*). If a defendant chooses to raise a claim of ineffective assistance of counsel on direct appeal, "the issue will be foreclosed from collateral review." *Woods*, 701 N.E.2d at 1220. This rule should "likely deter all but the most confident appellants from asserting any claim of ineffectiveness on direct appeal." *Id.* When a claim of ineffective assistance of counsel is based solely on the trial record, as it is on direct appeal, "every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight[,]" and "[i]t is no surprise that such claims almost always fail." *Id.* at 1216 (quoting *United States v. Taglia*, 922 F.2d 413, 418 (7th Cir. 1991), *cert. denied*).

A.     Failure to Object

Reed contends that his trial counsel was ineffective for failing to object to:  (1) Officer Salisbury's testimony—indicating that the other occupants of the vehicle told him

that Reed was driving the car—based on hearsay; and (2) Officer Salisbury's and Officer Stewart's testimony that Reed confessed to driving and to State's Exhibit 5, Reed's videotaped confession, based on the State's alleged failure to establish a *corpus delicti*.

"Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference." *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *reh'g denied*, *cert. denied*. "A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Furthermore, a defendant "'must show more than isolated poor strategy, bad tactics, a mistake, carelessness or inexperience; *the defense as a whole must be inadequate*.'" *Lambert v. State*, 743 N.E.2d 719, 741 (Ind. 2001) (quoting Miller v. State, 702 N.E.2d 1053, 1059 (Ind. 1998) (emphasis in original), *cert. denied*), *reh'g denied, cert. denied*.

Indeed, we assess counsel's performance based on facts that are known at the time and not through hindsight. *Shanabarger v. State*, 846 N.E.2d 702, 709 (Ind. Ct. App. 2006) (citing *Brown v. State*, 691 N.E.2d 438, 446 (Ind. 1998)), *trans. denied*. When considering whether counsel's performance was deficient, "the question is not whether the attorney could--or even should--have done something more[,]" rather "the inquiry must focus on what the attorney actually did[.]" *Reed*, 866 N.E.2d at 769. When a defendant bases an ineffective assistance of counsel claim on counsel's failure to object at trial, the defendant must show that a proper objection, if made, would have been sustained. *Jackson v. State*, 683 N.E.2d 560, 563 (Ind. 1997).

1. *Hearsay Objection*

8

Reed contends that his trial counsel was ineffective for failing to make a hearsay objection to Officer Salisbury's testimony that the other occupants of the vehicle indicated that Reed was driving the car.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). To prove ineffective assistance of counsel from the failure to object to hearsay statements, Reed "must prove that an objection would have been sustained, that the failure to object was unreasonable, and that he was prejudiced." *Potter v. State*, 684 N.E.2d 1127, 1134 (Ind. 1997). "Hearsay statements made by one witness are not prejudicial if the original declarant testifies to the same statements." *Id.* No prejudice results because "the statements are subject to cross-examination and the hearsay statements are superfluous." *Id.*

Reed asserts that his trial counsel's performance was deficient for failing to make a hearsay objection to Officer Salisbury's testimony during cross-examination, the State's re-direct examination, and re-cross examination.

Here, when Reed's counsel was cross-examining Officer Salisbury about what he did and did not do during his investigation on the night of the offense, the following exchange occurred:

[Reed's Counsel:]    When you spoke with Michelle Willyard did she indicate to you whether or not uh anybody had been uh drinking alcohol that night?

[Officer Salisbury:]  She stated that they had gone to a concert[,] that the male driver that she did not identify at the time was

9

driving erratically and that's why she wanted to get out to have a friend come give her a ride.

[Reed's Counsel:] Okay sir but my question was . .

[Officer Salisbury:] (INTERPOSING) I [d]on't recall Michelle stating anything about alcohol.

(Tr. 186-87).

A little later during the cross-examination, Reed's counsel was questioning Officer Salisbury about the fact that Reed first told the officers that he had not driven before he stated that he had driven. Reed's counsel also questioned the officer about the course of his investigation and the fact that he had not gotten any surveillance video from either Speedway gas station, which would have verified that Reed did not drive to the gas stations:

[Reed's Counsel:] But we don't know all those things because you never asked for any surveillance video, correct?

[Officer Salisbury:] No I simply spoke with everyone involved and at the conclusion of the incident they advised that Mr. Reed was driving the vehicle.

(Tr. 191).

On the State's re-direct examination of Officer Salisbury, the prosecutor followed up on Reed's question regarding statements made by Willyard:

[Prosecutor:] Mr. Gooch [Reed's counsel] asked you a question in regards to uh statements made by Ms. Willyard or if I'm pronouncing her name correctly, Willyard?

[Officer Salisbury:] Michelle?

[Prosecutor:] Michelle.

10

[Officer Salisbury:] From the McDonalds?

[Prosecutor:] Yes.

[Officer Salisbury:] Yes.

[Prosecutor:] Um did she tell you who was driving?

[Officer Salisbury:] She stated that Amanda's [Purtell's] boyfriend was driving.

(Tr. 192).

Thereafter, on re-cross examination, Reed's counsel tried to highlight that Officer Salisbury did not have first-hand knowledge about whether Reed drove that night:

[Reed's Counsel:] . . . [F]rom the accident site out on I-70 west to Speedway South, who do you believe was operating the vehicle that night?

[Officer Salisbury:] I believe Mr. Reed was operating the vehicle at the time the accident occurred.

[Reed's Counsel:] Okay.

[Officer Salisbury:] He very well could have been the individual to drive to the Speedway South where the altercation had taken place.

[Reed's Counsel:] So you don't know for certain?

[Officer Salisbury:] All I know from talking to all the individuals that he was operating the vehicle within Hendricks County between 267 and Ronald Reagan at the time of the accident that resulted in the damage on the vehicle.

[Reed's Counsel:] And my question is sir that you don't [know] for certain who was driving the vehicle when it pulled into the Speedway South location, correct?

[Officer Salisbury:] If you give me a moment to refer to my probable cause affidavit, I'll make sure . .

11

[Reed's Counsel:]    (INTERPOSING) Sir, I'm asking you what you recall today?

[Officer Salisbury:]  I don't recall, I don't recall.

[Reed's Counsel:]    Thank you.

(Tr. 192-93).

On appeal, Reed and the State discuss whether Officer Salisbury's testimony was hearsay under the analysis set forth by our Indiana Supreme Court in *Craig v. State*, 630 N.E.2d 207 (Ind. 1994).[3] We, however, need not engage in such an analysis. Even if we were to determine that the statements were hearsay, Reed has not shown that his counsel's failure to object to Officer Salisbury's testimony was unreasonable or that he was prejudiced.[4] *See Potter*, 684 N.E.2d at 1134.

From a complete review of the direct appeal record, it appears that Reed's counsel's lack of objection was part of his defense strategy. Reed's defense was that

---

[3] The *Craig* Court explained that when ruling on the admissibility of an out-of-court statement received by a police officer during the course of an investigation that is challenged as hearsay, the trial court should engage in a three-step inquiry. *Craig*, 630 N.E.2d at 211. First, the trial court should determine whether the challenged statement asserts a fact susceptible of being true or false. *Id.* Next, the trial court should consider the evidentiary purpose of the proffered statement. *Id.* If the evidentiary purpose is to prove the fact asserted, and the statement is neither from a witness nor a party described in Evidence Rule 801(d) and none of the hearsay exceptions apply, then the statement is hearsay and a hearsay objection would be sustained. *Id.* Lastly, if the proponent of the statement seeks admission for a purpose other than to prove the truth, the court should consider whether the fact to be proved is relevant to some issue in the case, and whether the danger of unfair prejudice that may result from its admission outweighs its probative value. *Id.*

[4] Additionally, it is unlikely that a hearsay objection would have been sustained given the specific manner of when and how the testimony occurred. First, from a procedural standpoint, it would not have been proper for Reed's counsel to make a hearsay objection to his own questioning of a witness during cross-examination or re-cross. The more appropriate action would be to move to strike the witness's testimony and to ask for an admonishment to the jury. Furthermore, an objection made during the State's re-direct examination would not have likely been sustained because the issue concerning the statements of the other vehicle's occupants had already been raised by Reed's counsel during cross-examination.

12

none of the police officers could testify for certain that Reed was driving because they never *saw* him driving that night.  Reed's counsel indicated during opening statements that he was planning to call the three people in the car as witnesses, each of whom had "firsthand knowledge" as to who was driving the car and would testify that Purtell, not Reed, was driving the car at all times that night.  (Tr. 167).  Reed's counsel knew, however, that each of those three witnesses had made statements to police indicating that Reed was driving.  Because Reed's counsel was planning to call them as witnesses, he may not have objected to Officer Salisbury's testimony because he would have realized that these witnesses' prior identification statements to police would have been admissible as substantive evidence under Indiana Evidence Rule 801(d)(1)(C)[5] upon their testimony regarding identification of the driver.  *See, e.g.*, *Kendall v. State*, 790 N.E.2d 122, 127-28, 132 (Ind. Ct. App. 2003) (explaining that a witness's prior statement to police identifying the defendant as the driver of the car used in the crime was admissible as substantive evidence under Evidence Rule 801(d)(1)(C) where the witness recanted her prior identification statement at trial identifying defendant), *trans. denied*.  *See also Dickens v. State*, 754 N.E.2d 1, 6 (Ind. 2001) (holding that witnesses' statements of identification recounted by police officers were not hearsay under Evidence Rule 801(d)(1)(C)); *Robinson v. State*, 682 N.E.2d 806, 810 (Ind. Ct. App. 1997) (holding that there was no error in allowing a police detective to testify regarding a witness's identification of the

---

[5] Indiana Evidence Rule 801(d)(1)(C) provides that a statement is *not* hearsay if: . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . one of identification of a person made shortly after perceiving the person . . . . " (Emphasis added).

13

defendant where the witness testified at trial and recanted his prior identification statement and claimed that his prior statement to police was a fabrication).

Because counsel is afforded considerable discretion in choosing strategy and tactics, we conclude that Reed has failed to prove that counsel's decision not to object to Officer Salisbury's testimony constituted ineffective assistance of counsel. *See, e.g.*, *Gates v. State*, 702 N.E.2d 1076, 1077 (Ind. 1998) (holding that trial counsel was not ineffective for failing to object to witnesses' testimony recalling the identification statement of other witnesses because the identification testimony was admissible under Indiana Evidence Rule 801(d)(1)(C)).

2. *Corpus Delicti Objection*

Reed asserts that his trial counsel was ineffective for failing to object to the admission of Officer Salisbury's and Officer Stewart's testimony that Reed admitted that he was driving and to State's Exhibit 5, Reed's videotaped confession, based on the State's alleged failure to establish the *corpus delicti* for the offense.

The *corpus delicti* rule "holds that a crime may not be proven based solely on a confession." *Malinski v. State*, 794 N.E.2d 1071, 1086 (Ind. 2003). "'Proof of the *corpus delicti* means proof that the specific crime charged has actually been committed by someone.'" *Cherry v. State*, 971 N.E.2d 726, 730 (Ind. Ct. App. 2012) (quoting *Taylor v. State*, 236 Ind. 415, 421, 140 N.E.2d 104, 108 (1957)), *trans. denied*. In regard to the *corpus delicti* rule, we have explained:

> For a confession to be admitted into evidence, the State must establish the *corpus delicti*. The purpose for requiring proof of the *corpus delicti* is to prevent the admission of a defendant's confession to a crime that never

14

occurred. The State is not required to prove the *corpus delicti* beyond a reasonable doubt, but must present independent evidence from which an inference may be drawn that a crime was committed. The *corpus delicti* need not be established prior to admission of the confession so long as the totality of independent evidence presented at trial establishes it. The *corpus delicti* may be established by circumstantial evidence.

*Weida v. State*, 693 N.E.2d 598, 600 (Ind. Ct. App. 1998) (internal citations omitted) (emphasis added), *trans. denied*.

Here, the totality of the evidence presented, independent of Reed's admission, reveals that the *corpus delicti* for the crime had been established. The State presented testimony that Reed, Purtell, Willyard, and Casey were all in a Dodge car, owned by Reed's mother, when it crashed on I-70, and they presented photographs of the car. When Officer Salisbury found the damaged car at the Speedway West station, Purtell and Reed were in the car. There was also evidence—via the State and Reed's stipulation— that on the night of the offense, Reed's driving privileges had been suspended for life after being convicted of being an HTV. Additionally, the State presented testimony, during re-direct examination of Officer Salisbury, that inferred that Reed had driven the car when it crashed. Accordingly, we conclude that Reed has failed to show that his trial counsel was ineffective for failing to make a *corpus delicti* objection. *See e.g.*, *Weida*, 693 N.E.2d at 600 (holding that evidence that police found the defendant in the passenger seat and another person in the driver's seat of a wrecked vehicle and both to be intoxicated "establishe[d] that the offense of driving under the influence was in fact committed by one of these two individuals" and was thus sufficient to establish the *corpus delicti* of the crime). *See also Groves v. State*, 479 N.E.2d 626, 628 (Ind. Ct. App.

15

1985) (finding sufficient corroborating proof to establish the *corpus delicti* of driving while intoxicated where the defendant was the owner of the vehicle and found near the wrecked vehicle soon after the accident).

B.     Eliciting Opinion Testimony

Finally, Reed suggests that his trial counsel was ineffective for eliciting opinion testimony that led to hearsay testimony from Officer Salisbury during re-cross examination.   Reed contends that his counsel's re-cross question asking the officer who he believed was operating the vehicle constituted deficient performance.   The officer responded that he believed Reed was driving because the other passengers had indicated that he was driving.   Thereafter, after Reed's counsel clarified that the officer did not know "for certain" who was driving, the officer acknowledged that he did not.  (Tr. 193).

Again, we conclude that Reed has failed to show that his trial counsel's performance was deficient.  The record suggests that counsel's re-cross examination of Officer Salisbury was merely part of his trial strategy to highlight that the officer did not have firsthand knowledge that Reed was driving because he had never seen Reed drive. "[T]he nature and extent of cross-examination is a matter of strategy delegated to trial counsel. *Robles v. State*, 612 N.E.2d 196, 198 (Ind. Ct. App. 1993).  "Deliberate choices by some attorneys for some tactical or strategic reason do not establish ineffective assistance of counsel even though such choices may be subject to criticism or the choices ultimately prove to be detrimental to the defendant." *Id.*

Because the direct appeal record before us suggests that trial counsel made a tactical decision regarding his re-cross examination of Officer Salisbury, Reed has not

16

met his burden of proving that his trial counsel's strategy equated to deficient performance. *See, e.g.*, *Robles*, 612 N.E.2d at 199 (holding that the defendant failed to show that his counsel was ineffective for eliciting vouching testimony on cross-examination was because counsel's cross-examination was a matter of trial strategy "that obviously did not work").

Affirmed.[6]

ROBB, C.J., and MAY, J., concur.

---

[6] Reed includes a footnote, which lists allegations of trial counsel's deficient performance during Reed's case-in-chief but states that these allegations are "moot." (Reed's Br. 6 n.2). Accordingly, we will not review these allegations.