## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Nov 15 2016, 6:47 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stanley L. Campbell
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Fernando J. Alvarez, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 15, 2016

Court of Appeals Case No.
02A05-1603-CR-480

Appeal from the Allen Superior
Court.
The Honorable Wendy W. Davis,
Judge.
Cause No. 02D06-1507-F6-581

**Barteau, Senior Judge**

# Statement of the Case

[1] Fernando Alvarez appeals his convictions of residential entry, a Level 6 felony,[1] criminal mischief, a Class B misdemeanor,[2] and invasion of privacy, a Level 6 felony.[3] We affirm.

# Issue

[2] The issue Alvarez presents is whether there is sufficient evidence to sustain his convictions.

# Facts and Procedural History

[3] The facts most favorable to the judgment establish that Alvarez and Kerri Pendergrass had been romantically involved since May 2014. On February 23, 2015, Kerri obtained an ex parte protective order against Alvarez that restrained him from having any contact with her. The protective order was personally served on Alvarez the following day. Despite the protective order, Alvarez and Kerri continued to see each other and live together.

[4] On March 25, 2015, police officers arrived at the apartment Alvarez was sharing with Kerri, arrested Alvarez, and took him to jail. Alvarez was charged

---

[1] Ind. Code § 35-43-2-1.5 (2014).

[2] Ind. Code § 35-43-1-2 (2014).

[3] Ind. Code § 35-46-1-15.1(2) (2014). Invasion of privacy is a Level 6 felony if the person has a prior unrelated conviction for an offense under this statute. Following his jury trial, Alvarez admitted that he had a prior conviction for invasion of privacy.

with invasion of privacy for violating the protective order. The case was dismissed but the protective order remained in effect.

[5] Two weeks before June 25, 2015, Kerri ended her relationship with Alvarez. At that time, Kerri lived in a house located in Fort Wayne, Indiana. The house was owned by her father, John Pendergrass.

[6] On June 25th, Kerri was at her home with her friends, Mike and Olivia, and Olivia's daughter. Alvarez claimed to have received text messages that purported to come from Kerri, asking him to come to Kerri's house. The messages were not sent by Kerri. Alvarez's nephew, Tyler, gave Alvarez a ride to Kerri's house. Three other individuals also rode in the car.

[7] A neighbor saw a car turn into Kerri's driveway. The neighbor testified that one person emerged from the car and ran toward the house. The neighbor then heard yelling coming from the house. She first called Kerri's father, John Pendergrass (hereinafter called John), who lived close by, and then called 911.

[8] Around 3:00 a.m., Kerri was in her kitchen. She heard Alvarez pounding on the front door, demanding to be let into the house. When he was denied entry, Alvarez kicked open the front door and chased Kerri into the bedroom. Mike was in the bedroom. Kerri ran from the bedroom, and Alvarez and Mike began to argue. When Kerri reached her living room, she saw Tyler standing there. Kerri and Olivia managed to push all three men out of the house. The two then closed and locked the front door and went upstairs with Olivia's daughter.

[9] Ten 911 calls were placed regarding the incident. Kerri's father John received calls from the neighbor, his daughter, and Olivia regarding the incident. John drove to Kerri's house and exited his vehicle. He observed several individuals, including Alvarez, standing in the yard. John and Alvarez tussled. Alvarez eventually broke free from John, ran across the yard, and jumped over a fence and into the backseat of a car. The vehicle sped away.

[10] John looked at the front door to the house and noticed a footprint on the door, and that the door appeared to have been kicked in. The framing on the door was broken and a piece of the framing was laying on the floor.

[11] An Allen County police officer was dispatched to Kerri's house at 3:26 a.m. The officer saw the footprint on the front door. When Kerri spoke to an Allen County Sheriff's Department detective about the incident later in the day on June 25th, she confirmed that she had an active protective order against Alvarez. When the detective showed her a photographic line-up and asked her to point to the individual who kicked-in her door, Kerri pointed to Alvarez's picture.

[12] Alvarez was charged with residential entry and invasion of privacy, both Level 6 felonies, criminal mischief as a Class B misdemeanor, and misdemeanor battery. The battery charge was dismissed. Following a jury trial, Alvarez was found guilty as charged.[4] Alvarez now appeals.

---

[4] At the time the jury trial took place, on January 6 and 7, 2016, Kerri and Alvarez had reconciled.

# Discussion and Decision

[13] Alvarez argues there is insufficient evidence to support his convictions of residential entry and criminal mischief. He also argues the State failed to present sufficient evidence to support his conviction of invasion of privacy.

[14] In reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor assess the credibility of witnesses. *Bailey v. State,* 979 N.E.2d 133, 135 (Ind. 2012). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict. *Id.* We affirm if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

## *I. Residential Entry*

[15] To convict Alvarez of residential entry, the State was required to prove he (1) knowingly or intentionally (2) broke and entered (3) Kerri, or John's, dwelling.[5] Ind. Code § 35-43-2-1.5. Alvarez argues that the State failed to prove the element of "breaking," and maintains that it was his nephew Tyler who kicked-in Kerri's front door. The element of breaking may be proved entirely by circumstantial evidence. *Utley v. State*, 589 N.E.2d 232, 240-41 (Ind. 1992). We find from the evidence presented at trial, the jury could reasonably have inferred that Alvarez kicked-in Kerri's front door to gain entry to her house.

---

[5] The house Kerri lived in at the time of the incident was owned by her father, John.

[16] The Allen County police officer testified that he spoke to Kerri shortly after the incident occurred and that she was visibly upset and had been crying. She told the officer that Alvarez came to her house and began pounding on the front door, demanding to be let into the house. When he was denied entry, he kicked open the front door and chased Kerri into the bedroom. The officer saw the footprint on the front door.

[17] The detective testified that when he spoke to Kerri the next day regarding the incident, showed her a photographic line-up, and asked her to point to the individual who kicked-in her door, Kerri pointed to Alvarez's picture. The detective stated that there was no hesitation on Kerri's part.

[18] Alvarez offered testimony indicating that his nephew kicked-in the front door. Kerri testified that she did not see Alvarez kick-in her front door. However, it is the fact-finder's role to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Hinton v. State*, 52 N.E.3d 1, 2 (Ind. Ct. App. 2016). The jury was free to accept or reject Alvarez and Kerri's testimony.[6] We decline Alvarez's request to reweigh the evidence.

---

[6] Alvarez also testified that he entered Kerri's house through an unlocked side door, and was then able to look into Kerri's bedroom through the glass of an interior door. Tr. pp. 252-53. We note that the opening of an unlocked door is sufficient to establish a "breaking" occurred. *See Canaan v. State*, 541 N.E.2d 894, 906 (Ind. 1989).

Sufficient evidence was presented to establish Alvarez broke and entered Kerri's house.[7]

### II. Criminal Mischief

[19] Alvarez next argues that insufficient evidence exists to support his conviction of criminal mischief. Indiana Code section 35-43-1-2(a) defines criminal mischief, a Class B misdemeanor, as a person who recklessly, knowingly or intentionally damages or defaces property of another person without the other person's consent.

[20] Alvarez contends the State failed to prove that he was the individual who damaged Kerri's front door. The evidence presented at trial reflects otherwise. A neighbor testified that she saw one person exit a car and run toward Kerri's house. Two law enforcement officers testified that Kerri told them that Alvarez kicked-in her door. Both officers testified that they saw a shoe print on the front door. Kerri testified that the shoe print was not on the door prior to June 25th. When Alvarez was interviewed by a police officer about the incident and asked if the officer "could take his shoes into evidence" as a way to clear Alvarez as a suspect, Alvarez indicated that he did not want to give the officer his shoes. Tr. p. 216. Alvarez made a call from the jail in which he stated that he had

---

[7] The State asserts that even if the evidence points to Tyler kicking in Kerri's front door, instead of Alvarez, Tyler's act would be imputed to Alvarez because Alvarez acted as an accomplice. Because we find sufficient evidence was presented to establish that Alvarez kicked-in Kerri's door, we do not reach the State's accomplice argument.

"[messed] up real good." *Id*. at 220. We find the State presented sufficient evidence to prove that it was Alvarez who damaged Kerri's front door.

### III. Invasion of Privacy – Mistake of Fact

[21] Alvarez next argues the defense of mistake of fact, and that insufficient evidence was presented to sustain his conviction for invasion of privacy because he had a reasonable belief that the protective order had been lifted. Alvarez maintains that he thought the protective order was lifted when the case involving his March 25, 2015 arrest for invasion of privacy (for violation of the February 2015 protective order) was dismissed.

[22] To convict Alvarez of invasion of privacy as charged here, the State had to prove beyond a reasonable doubt that he *knowingly or intentionally* violated an ex parte protective order. Appellant's App. p. 13; *see* Ind. Code § 35-46-1-15.1(2). "It is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense." Ind. Code § 35-41-3-7 (1977). Upon invoking mistake of fact as a defense, the burden shifts to the defendant to satisfy three elements: "(1) that the mistake be honest and reasonable; (2) that the mistake be about a matter of fact; and (3) that the mistake negate the culpability required to commit the crime." *Potter v. State,* 684 N.E.2d 1127, 1135 (Ind. 1997). Whether Alvarez made a mistake of fact is a question for the trier of fact, which we review under the same standard applied when the sufficiency of the evidence is challenged. *See Saunders v. State,* 848 N.E.2d 1117, 1121 (Ind. Ct. App. 2006), *trans. denied.*

Alvarez did not tender a jury instruction on the mistake of fact defense. As a result, he has waived this issue for appellate review. *See Nolan v. State,* 863 N.E.2d 398, 404 (Ind. Ct. App. 2007) (holding that defendant waived appellate review of mistake-of-fact argument by failing to offer a jury instruction on mistake-of-fact defense), *trans. denied.*

Waiver notwithstanding, an Allen County police officer personally served Alvarez with the ex parte protective order in February 2015. The order still was in effect on June 25, 2015, the date of the incident. When Kerri spoke to the detective the morning of June 25th, she told him there was an active protective order against Alvarez. Alvarez presented no evidence (other than his and Kerri's trial testimony) indicating the protective order had been lifted.

Alvarez does not deny that he knew the order had been issued, but asserts he had a reasonable belief that the order had been lifted. The jury was in no way bound to believe Alvarez's assertion. His argument amounts to a request to reweigh the evidence and judge the credibility of witnesses, which we will not do. *Bailey,* 979 N.E.2d at 135. We find that the State presented sufficient evidence that Alvarez knowingly or intentionally violated the ex parte protective order.

## Conclusion

For the reasons stated above, we affirm Alvarez's convictions for residential entry, criminal mischief, and invasion of privacy.

Affirmed.

Baker, J., and Bradford, J., concur.