## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 16 2015, 8:59 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Kathleen Cleary
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Antelmo Juarez,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent*

June 16, 2015

Court of Appeals Case No. 20A03-1410-PC-350

Appeal from the Elkhart Circuit Court

The Honorable Terry C. Shewmaker, Judge

Case No. 20C01-1109-PC-20

**Vaidik, Chief Judge.**

# Case Summary

Antelmo Juarez was convicted of murder and criminal gang activity and sentenced to a fifty-five-year aggregate sentence in 2007. This Court affirmed his convictions and sentence on direct appeal in 2010. Three years later Juarez filed an amended petition for post-conviction relief arguing that he received ineffective assistance of both trial and appellate counsel. The post-conviction court denied the petition, and Juarez now appeals the denial. Because Juarez has failed to show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court, we affirm.

## Facts and Procedural History

This Court set forth the facts as follows in Juarez's direct appeal:

> On February 18, 2006, fifteen-year-old Juarez and his nineteen-year-old brother, Oscar Perez, were members of the Nortenos gang. That evening, as they were leaving their residence with some of their friends, Perez told Juarez to go back inside and get the gun, which was a SKS rifle. Juarez put the rifle into the back of a friend's Dodge Durango. At some point during the evening, Perez moved the rifle to another vehicle, which was an Acura.
>
> The group later went to La Bamba, a club in Goshen. While they were in the club, the group of Nortenos got into a fight with a group of rival gang members, the Surenos. Security officers threw the Nortenos out of the club, and the Surenos followed them to the parking lot. The Surenos left the parking lot in a Chevrolet Malibu, while the Nortenos followed in the Durango and the Acura. The Durango pulled up beside the Malibu, and some Nortenos gang members shot paintballs at the Malibu. Juarez and Perez were passengers in the Acura, which was following the Malibu and the Durango.
>
> After seeing that the altercation was continuing, Perez told Juarez to "hand me the gun real quick," and Juarez handed the rifle to Perez. Tr. p. 880. The Surenos became upset about the paintballs, and the driver of the Malibu rammed into the back of the Durango. Perez then rolled his window down

and fired the rifle at the Malibu, killing fourteen-year-old Rogelio Reyes and wounding Saul Rodriguez.

*Juarez v. State*, Cause No. 20A05-1006-CR-405 (Ind. Ct. App. Dec. 13, 2010), slip op. at 2-3, *trans. denied*.

[3] Following the shooting, Juarez and his mother, Maria Botello, went to the Goshen police station, where they were both advised of Juarez's *Miranda* rights. Botello and Juarez were given time to consult privately before they both signed a form waiving those rights. Juarez subsequently gave a police statement wherein he admitted that after the gang members in the Durango fired paintballs at the Malibu, he handed the rifle to his brother, Oscar, who fired multiple shots at the Malibu. The trial court admitted this statement into evidence at trial.

[4] Also during trial, Juarez did not object when Oscar became belligerent while the State was confronting him about his conflicting statements regarding Juarez's involvement in the offenses. In addition, the State impeached Oscar with the fact that he had been convicted of murder and attempted murder for his role in these events. At defense counsel's request, the trial court instructed the jury that these references were admissible only for impeachment purposes. During closing argument, defense counsel did not object when the prosecutor made three additional references to these convictions.

[5] A jury convicted Juarez of murder and criminal gang activity as a Class D felony.[1] The trial court sentenced him to a fifty-five-year executed sentence, which included concurrent sentences of fifty-five years for murder and one and one-half years for criminal gang activity. This Court affirmed the convictions and sentence on direct appeal. Juarez filed a pro se petition for post-conviction relief in September 2011 and an amended petition, by counsel, in August 2013. The post-conviction court held a bifurcated evidentiary hearing in October 2013 and February 2014.

[6] Evidence admitted at the post-conviction hearing revealed attorneys David Newman and Michael Tuszynski represented Juarez at trial. Newman testified that most of the participants in the offenses confessed, and the facts were not in dispute. Therefore, Newman explained, the best trial strategy was to argue that Juarez's conduct had only been reckless and to seek a conviction for the lesser offense of reckless homicide. Newman further testified that he did not consider tendering an instruction on the defense of others because neither his trial strategy nor the facts of the case supported one.

[7] Newman also testified that he did not consider filing a motion to suppress Juarez's statement because Juarez's mother, Botello, a native Spanish speaker, had access to an interpreter had she needed one. Goshen Police Department

---

[1] Oscar was convicted of murder, Class A felony attempted murder, and Class D felony criminal gang activity. This Court affirmed his convictions, *Perez v. State*, 872 N.E.2d 208 (Ind. Ct. App. 2007), *trans. denied*, and the denial of his petition for post-conviction relief. *Perez v. State*, Cause No. 20A03-1212-PC-532 (Ind. Ct. App. Aug. 28, 2013).

Detective Mitchell Herschberger testified that he read the *Miranda* advisement of rights to both Juarez and Botello and then left the room so they could consult privately. Although Juarez's sister testified at the post-conviction hearing that Botello only understood a few words of English, the evidence further revealed that forty-three-year-old Botello has lived in the United States for twenty-seven years. She has a driver's license and is treated by English-speaking doctors. Botello did not testify at the hearing. Following the hearing, the post-conviction court denied Juarez's petition in September 2014.

[8] Juarez now appeals.

# Discussion and Decision

[9] A defendant who has exhausted the direct-appeal process may challenge the correctness of his conviction and sentence by filing a post-conviction petition. *Parish v. State*, 838 N.E.2d 495, 499 (Ind. Ct. App. 2005), *reh'g denied*. Post-conviction procedures do not provide an opportunity for a super appeal. *Id.* Rather, they create a narrow remedy for subsequent collateral challenges to convictions that must be based on grounds enumerated in the post-conviction rules. *Id.* Post-conviction proceedings are civil proceedings, and a defendant must establish his claims by a preponderance of the evidence. *Id.*

[10] In reviewing the judgment of a post-conviction court, this Court considers only the evidence and reasonable inferences supporting its judgment. *Hall v. State*, 849 N.E.2d 466, 468 (Ind. 2006). The post-conviction court is the sole judge of

the evidence and the credibility of witnesses. *Id.* To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will the court's findings or conclusions be disturbed as being contrary to law. *Id.* at 469.

[11] Juarez argues that the post-conviction court erred in denying his petition because he received ineffective assistance of trial counsel. We review claims of ineffective assistance of trial counsel under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must show that trial counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Moody v. State*, 749 N.E.2d 65, 67 (Ind. Ct. App. 2001), *trans. denied*.

[12] Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference on appeal. *Wrinkles v. State*, 749 N.E.2d 1179, 1195 (Ind. 2001). Counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption. *Smith v. State*, 822 N.E.2d 193, 202 (Ind. Ct. App. 2005), *trans. denied*. We will not speculate as to what may or may not have been advantageous trial strategy as counsel should be given deference in choosing a

trial strategy which, at the time and under the circumstances, seems best. *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998).

[13] Juarez contends that his trial counsel was ineffective because counsel failed to: 1) object to Preliminary and Final Instructions 2 and 3; 2) object to Final Instruction 6; 3) tender a defense-of-others instruction; 4) file a motion to suppress Juarez's police statement; 5) object to Oscar's testimony; and 6) object to the prosecutor's closing argument. Juarez also argues that the cumulative effect of the alleged errors amounted to ineffective assistance of counsel.

# I. Instructional Errors

[14] Juarez contends that trial court was ineffective for failing to object to Preliminary and Final Instructions 2 and 3 and Final Instruction 6 and for failing to tender a defense-of-others instruction.

# A. Failure to Object to Instructions

[15] In order to establish that counsel's failure to object to a jury instruction was ineffective assistance of counsel, a defendant must first prove that a proper objection would have been sustained. *Potter v. State*, 684 N.E.2d 1127, 1132 (Ind. 1997). A defendant must also prove that his failure to object was unreasonable and resulted in sufficient prejudice that there exists a reasonable probability the outcome would have been different. *Id.*

[16] Preliminary and Final Instructions 2 and 3 provide in relevant part as follows:

In this case, the State of Indiana has charged the Defendant with Count I, Murder, a Felony . . . . The charge reads as follows:

COUNT I:

The undersigned affiant swears that on or about the 19th day of February, 2006, at the County of Elkhart and State of Indiana, one ANTELMO JUAREZ, did knowingly assist one Oscar Eduardo Oscar in the killing of another human being, to-wit: Rogelio Reyes, as the said Oscar Eduardo Oscar did shoot the said Rogelio Reyes with a dangerous and deadly weapon, to-wit: a firearm, and as a direct and proximate result of the shooting as aforesaid, the said Rogelio Reyes was fatally wounded and did languish and die in said County and State on the 19th day of February, 2006; all of which is contrary to the form of I.C. § 35-42-1-1 & 35-41-2-4; contrary to the form of the statute in such cases made and provided; and, against the peace and dignity of the State of Indiana. . . .

Appellant's App. p. 69, 101 (Preliminary and Final Instructions 2).

The crime of murder as alleged in Count I is defined by statute as follows:

A person who knowingly aids, induces or causes another person in killing another human being commits murder, a felony.

To convict the defendant, the State must have proved each of the following elements:

The defendant:

1. knowingly

2. aided, induced, or caused

3. the killing of

4. another human being

The State must prove that the defendant knowingly committed each element of this offense.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of murder, a felony. . . .

Appellant's App. p. 102 (Final Instruction 3).

[17] Juarez argues that trial counsel should have objected to these instructions because "they failed to set forth essential elements of the charge." Appellant's Br. p. 9. Specifically, Juarez contends that the jury was not instructed that Juarez had to know or intend that Reyes be killed.

[18] The Indiana Supreme Court addressed a similar argument in *Taylor v. State*, 840 N.E.2d 324 (Ind. 2006), where Taylor also argued that trial counsel was ineffective for failing to object to an accomplice-liability instruction on the basis that it omitted an essential element of the offense. In *Taylor*, the defendant was charged both as a principal and an accomplice. The trial court instructed the jury as follows with regard to the accomplice liability murder charge:

> To sustain the charge of murder, the State must prove the following elements:
>
> \*       \*       \*       \*       \*
>
> [T]hat KENYAN L. TAYLOR
>
> 1. knowingly or intentionally aided, induced or caused another person to,
>
> 2. kill,
>
> 3. WALTER ANDERSON
>
> If you find from your consideration of all the evidence that each of the elements, or one set of circumstances has been proved beyond a reasonable doubt, then you should find the defendant guilty of Murder.
>
> However, if you find from your consideration of all the evidence that any of the elements, or one set of circumstances has not been proved beyond a reasonable doubt, then you should find the defendant not guilty of murder.

*Id.* at 334-35.

[19] We agree with the State that the instructions in *Taylor* "laid out the elements exactly as did the instruction in this case: knowingly aiding, inducing, or causing the death of another person. . . . *Taylor*'s instruction says that the accomplice must knowingly aid, induce or cause another person to kill the victim; [Juarez's] instruction says that the accomplice must knowingly aid, induce or cause the killing of the victim. They contain the same language, just slightly re-arranged . . . ." Appellee's Br. p. 13, 14.

[20] We further note that the jury in this case was instructed that the accomplice must act knowingly. If a level of culpability is required for the commission of an offense, it is required with respect to every material element of the prohibited conduct. *See* Ind. Code § 35-41-2-2(d). That requirement is more clear in the instruction in this case than it was in *Taylor* because the instruction in this case includes additional language that the State "must prove the defendant knowingly committed each element of this offense." Appellant's App. p. 102. The jury in this case was therefore specifically instructed that Juarez had to act with an awareness of the high probability that someone would be killed.

[21] We further note that it is axiomatic that if a person knowingly aids another in the commission of an act, that person knows that the other will commit the act when the person aids him. The jury was correctly instructed, and trial counsel was not ineffective for failing to object to this instruction.

[22] Final Instruction 6, an accomplice-liability instruction, provides as follows:

A person is responsible for the acts of his accomplice as well as his own. The acts of one person are attributable to all who are knowingly acting together during the commission of a crime. Accordingly, the State need not prove, beyond a reasonable doubt, that the defendant personally, and acting by himself, committed all of the elements of the crime with which he is charged. However, the State must prove, beyond a reasonable doubt, that the defendant and another person or persons, acting together, committed all of the elements of the crime with which he is charged.

It is not necessary for the State to show that a defendant was a party to a preconceived scheme; it must merely show concerted action or participation in an illegal act by the defendant.

Although it is true that mere presence is not enough to show a person's participation in a crime, such presence may be considered with all other evidence to determine guilt. Factors considered by the fact-finder to determine whether a defendant aided another in the commission of a crime include: (1) presence at the scene of the crime; (2) companionship with another engaged in the crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the offense which tends to show complicity.

You are further instructed that accomplice liability applies to the contemplated offense and all acts that are a probable and natural consequence of the concerted action.

*Id.* at 107.

[23] Juarez specifically argues that trial counsel should have objected to the last sentence of the instruction. According to Juarez, this sentence created a mandatory presumption and shifted the burden of proof to him in violation of *Sandstrom v. Montana*, 442 U.S. 510 (1979). In *Sandstrom*, the United States Supreme Court held that the instruction, "the law presumes that a person intends the ordinary consequences of his voluntary acts," impermissibly relieved the State of proving the defendant's intent beyond a reasonable doubt. *Id.* at 524.

However, *Sandstrom* is distinguishable for two reasons. First, *Sandstrom* was not an accomplice-liability case. Second, the instruction in this case does not include the word "presume," and we fail to see how it creates a mandatory presumption of any kind. Further, and most important, the last sentence of this instruction is a correct statement of the law. *See Wieland v. State*, 736 N.E.2d 1198, 1202 (Ind. 2000); *Tuggle v. State*, 9 N.E.3d 726, 736 (Ind. Ct. App. 2014) (explaining that "accomplice liability applies to the contemplated offense and all acts that are a probable and natural consequence of the concerted action"). Trial counsel was not ineffective for failing to object to it.

## B. Failure to Tender an Instruction

To prevail on his argument that trial counsel was ineffective for failing to tender a defense-of-others instruction, Juarez must prove that he was entitled to the defense and that he was prejudiced when the jury was not instructed on the defense. *Potter*, 684 N.E.2d at 1135.

At the post-conviction hearing, trial counsel testified that he did not tender a defense-of-others instruction because neither his trial strategy nor the facts of the case supported one. Specifically, trial counsel explained that his trial strategy was to argue that Juarez's conduct had only been reckless and to seek a conviction for the lesser offense of reckless homicide.

The choice of defenses for trial is a matter of trial strategy, *Overstreet v. State*, 877 N.E.2d 144, 154 (Ind. 2007), which will not be second-guessed unless it is so deficient or unreasonable as to fall outside of the objective standard of

reasonableness. *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998). This is true even when the strategic choices made ultimately prove detrimental or are subject to criticism. *Wrinkles*, 749 N.E.2d at 1195.

[28] Here, the choice of a reckless-homicide defense does not fall outside of the objective standard of reasonableness. At the time of the offense in this case, Indiana Code section 35-42-1-5 provided that a "person who recklessly kills another human being commits reckless homicide, a Class C felony." Ind. Code Ann. § 35-42-1-5 (West 2012). Reckless is defined as engaging "in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." I.C. § 35-41-2-2. Juarez handed a rifle to Oscar during an altercation with a car containing rival gang members. It does not fall outside the objective standard of reasonableness to argue that firing a rifle out of a car at another car full of rival gang members is reckless behavior.

[29] In addition, we agree with the State that "any claim of self-defense/defense of others was doomed to fail." Appellee's Br. p. 21. A valid claim of defense of oneself or another person is legal justification for an otherwise criminal act. Ind. Code § 35-41-3-2. To prevail on a claim of self-defense, the defendant must present evidence that he: 1) was in a place he had a right to be; 2) did not provoke, instigate, or participate willingly in the violence; and 3) had a reasonable fear of death or great bodily harm. *Bryant v. State*, 984 N.E.2d 240, 250 (Ind. Ct. App. 2013). A person is not justified in using force if the person has entered into combat with another person or is the initial aggressor unless

the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue the unlawful action. Ind. Code § 35-31-3-2(e). In addition, firing multiple shots undercuts a claim of self-defense. *Randolph v. State*, 755 N.E.2d 572, 576 (Ind. 2001).

[30] Here, Juarez willingly participated in the violence by handing his brother a rifle during an altercation with rival gang members in another car. In addition, multiple shots were fired. Based on this evidence, trial counsel was not ineffective for failing to tender a defense-of-others instruction.

## II. Failure to File a Motion to Suppress

[31] Juarez next argues that trial counsel was ineffective for failing to file a motion to suppress Juarez's police statement. Specifically, Juarez contends that his mother, Botello, who is not a native English speaker, did not knowingly and intelligently waive Juarez's rights because the waiver form she signed was in English and she did not understand the English advisement.

[32] The admissibility of a statement or confession is determined from a totality of the circumstances. *Brown v. State*, 485 N.E.2d 108, 112 (Ind. 1985). Specifically, we examine the circumstances surrounding the interrogation to determine whether the waiver was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and whether the waiver was made with full awareness of the nature of the rights being abandoned and the

consequences of the decision to abandon them. *D.M. v. State*, 949 N.E.2d 327, 339 (Ind. 2011).

[33] Here, our review of the evidence reveals that Detective Herschberger read the *Miranda* advisement of rights to both Juarez and his mother and then left the room so they could consult privately. When he returned, Juarez and his mother waived Juarez's rights, and Juarez told the detective that he handed the rifle to his brother when asked to do so. As to Botello's English-speaking abilities, the evidence reveals that forty-three-year-old Botello has lived in the United States for twenty-seven years. She has a driver's license and is treated by English-speaking doctors. Notably, she did not request an interpreter at the time of the advisements although there was one available, and she did not testify at the post-conviction hearing. Rather, it was Juarez's sister who testified that Botello understands only a few words of English.

[34] The post-conviction court concluded that Juarez failed to show that his mother did not understand the advisement and waiver of rights. Juarez has failed to show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court.

## III. Failure to Object to Oscar's Testimony

[35] Juarez also argues that defense counsel was ineffective because he failed to object to Oscar's "outrageous behavior" during re-direct examination. Appellant's Br. p. 19. Specifically, as the State was confronting Oscar about his conflicting statements regarding Juarez's involvement in the crime, Oscar

became belligerent and "'[went] off' on the prosecutor in a soliloquy, liberally laced with the word 'f***ing' that lasted two pages," Appellee's Br. p. 22, and which provides in relevant part as follows:

> [O]nce I found out that I had killed somebody, man, which I didn't know. . . . I wasn't truthful completely. . . . You know what I'm saying, I was scared sh*tless, man. . . . Yeah, I, f***ing maybe didn't say the truth completely, but I'm telling you the truth now. Self-preservation made me do that. I even f***ing tried to prove the blame on him. I tried to say that he f***ing shot him. Hell, yeah. I was f***ing scared. I wasn't going to f***ing say the f***ing truth at the moment. . . . You trying to f***ing put this off on a 15 year old for something I did. What the f***, man? I f***ing shot that f***ing person. I did it. . . . I acted completely on my own. . . . You f***ing gave me 85 years for that. I'm paying the price for what I did. Now, you want to take my brother too? . . . Will it make you feel better for him to f***ing do 85 to 65 years too? Yeah. You're a big guy. F*** it. . . . Kiss this white dude's a**, man, do it. That's what you're doing cause you ain't doing justice. The justice has been served. I'm guilty of that sh*t.

Tr. p. 901-02.

[36]  To establish ineffective assistance of counsel based on the failure to object, the petitioner must show that the objection would have been sustained if made and that he was prejudiced by counsel's failure. *Wrinkles*, 749 N.E.2d at 1192. Here, Juarez failed both to set forth the precise objection that he believes counsel should have made and to demonstrate that it would have been sustained. Juarez's cursory statement regarding Oscar's outrageous behavior without supporting argument results in waiver of this issue. *See Canaan v. State,* 653 N.E.2d 227, 232 (Ind. 1997).

[37] Waiver notwithstanding, Juarez has also failed to show prejudice. He admits that the sole authority he offers in support of his prejudice argument is "not squarely on point," Appellant's Br. p. 19, and we agree with the State that Oscar's testimony that he was solely to blame for Reyes's death, and his accusation that the State was attempting to "f***ing put this off on a 15 year old for something he did," was more likely to help Juarez's defense than hurt it. Tr. p. 902. Juarez has failed to establish that trial counsel was ineffective for failing to object to Oscar's testimony.

## IV. Failure to Object during Closing Argument to the Prosecutor's References to Oscar's Convictions

[38] Juarez further argues that trial counsel was ineffective for failing to object during closing argument to the prosecutor's references to Oscar's convictions. During trial, the State impeached Juarez's brother, Oscar, with the fact that he had been convicted of murder and attempted murder for his role in these events. At defense counsel's request, the trial court instructed the jury that these references were admissible only for impeachment purposes. During closing argument, defense counsel did not object when the prosecutor made three additional references to the convictions. Juarez argues that defense counsel was ineffective when he failed to object to these references because the "State was using the murder conviction as substantive evidence of guilt and not for the limited purpose of impeachment." Appellant's Br. p. 21.

[39] In support of his argument, Juarez directs us to *Humphrey v. State*, 680 N.E.2d 836 (Ind. 1997). However, the facts of *Humphrey* are distinguishable from those

before us. There, a witness told police that Humphrey admitted shooting someone who matched the victim's description. At trial, however, the witness repudiated his statement, which the trial court nevertheless allowed into evidence. On appeal, Humphrey conceded the statement was admissible to impeach the witness's credibility but argued that the jury was wrongly allowed to consider the statement as substantive evidence. The Indiana Supreme Court pointed out that defense counsel had neither requested a limiting instruction nor objected to the trial court's "unlimiting" instruction telling the jurors they were free to consider a prior inconsistent statement both to impeach and as substantive evidence bearing on Humphrey's guilt or innocence. *Id.* at 840. Here, however, the trial court gave a limiting instruction at defense counsel's request. When a limiting instruction is given that certain evidence may be considered for only a particular purpose, the law presumes that the jury will follow the court's admonition. *Hernandez v. State*, 785 N.E.2d 294, 303 (Ind. Ct. App. 2003). In addition, the jury in this case was not instructed with a misstatement of law.

[40] We further note that the jury was instructed as follows that it had to assess Juarez's guilt without regard to Oscar's conviction:

> The fact that a co-defendant pleads guilty or is convicted is not evidence of the guilt of any other defendant, or that the crime charged in the information was committed. The guilt or innocence of the defendant still on trial must be determined by the jury solely by the evidence introduced in the trial in this case.

Appellant's App. p. 109. A jury is presumed to follow the trial court's instructions. *Laux v. State*, 985 N.E.2d 739, 750 (Ind. Ct. App. 2013). We

therefore agree with the State that even if the jury used the prosecutor's references to the crimes as substantive evidence that Oscar was guilty of murder, the instruction explained that the jury could not find Juarez guilty as an accomplice to murder simply because another jury had found Oscar guilty of murder. We further agree with the State that this instruction cures any potential prejudice caused by the prosecutor's argument.

[41] Last, at the post-conviction hearing, defense counsel explained that his failure to object to the references to Oscar's convictions during closing argument was a trial strategy. Specifically, defense counsel explained that, in his experience, jurors tend to respond negatively when counsel objects during the State's closing argument, and an attorney who makes such objections risks losing the credibility he has established with the jury during the course of the trial. We give deference to counsel's trial strategy which, at the time, and under the circumstances, seems best and presume his performance is effective. *Whitener*, 696 N.E.2d at 42. Juarez's evidence does not overcome this presumption. *See Smith*, 822 N.E.2d at 202.

# V. Cumulative Error

[42] Last, Juarez argues that the "cumulative effect of counsel's errors deprived [him] of his . . . right to the effective assistance of counsel." Appellant's Br. p. 24. However, the Indiana Supreme Court has explained that "[t]rial irregularities which standing alone do not amount to error do not gain the stature of reversible error when taken together." *Kubsch v. State*, 934 N.E.2d

1138, 1154 (Ind. 2010) (citing *Reaves v. State*, 586 N.E.2d 847, 858 (Ind. 1992)).[2]

We find no error, cumulative or otherwise, here.

[43] Affirmed.

Kirsch, J., and Bradford, J., concur.

---

[2] Juarez also argues that he received ineffective assistance of appellate counsel because his appellate attorney failed to argue that trial counsel's failure to challenge Preliminary and Final Instructions 2 and 3 as well as Final Instruction 6 constituted fundamental error. The standard of review for ineffective assistance of appellate counsel is the same as for trial counsel in that the defendant must show that appellate counsel was deficient in his performance and that the deficiency resulted in prejudice. *Henley v. State*, 881 N.E.2d 639, 644 (Ind. 2008). Here, however, because we have already determined that Juarez's trial counsel was not ineffective for failing to challenge these instructions, Juarez can show neither deficient performance nor resulting prejudice as a result of his appellate counsel's failure to challenge them. *See Davis v. State*, 819 N.E.2d 863, 872-73 (Ind. Ct. App. 2004), *trans. denied*.